**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GATLIN OIL COMPANY, INCORPORATED,
a North Carolina Corporation,
<u>Plaintiff-Appellee,</u>

v.                                                                  No. 97-2079

UNITED STATES OF AMERICA;
DEPARTMENT OF TRANSPORTATION,
<u>Defendants-Appellants.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at New Bern.
Malcolm J. Howard, District Judge.
(CA-96-142-4-H)

Argued: September 21, 1998

Decided: March 2, 1999

Before NIEMEYER and MOTZ, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Vacated and remanded by published opinion. Senior Judge Butzner
wrote the majority opinion, in which Judge Motz joined. Judge Nie-
meyer wrote an opinion concurring in part and dissenting in part.

_____

**COUNSEL**

**ARGUED:** Joan M. Pepin, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Appellants. Donna Pyle Walker,
WALKER, WALKER, WENDLANDT & OSOWSKI, L.L.C.,

Anchorage, Alaska, for Appellee. **ON BRIEF:** Lois J. Schiffer, Assistant Attorney General, Robert L. Klarquist, Cherie L. Rogers, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Capt. Derek Capizzi, Lt. Michele Bouziane, National Pollution Funds Center, UNITED STATES COAST GUARD, Arlington, Virginia; Lcdr. Peter Simons, Office of Claims & Litigation, UNITED STATES COAST GUARD, Washington, D.C., for Appellants. William M. Walker, WALKER, WALKER, WENDLANDT & OSOWSKI, L.L.C., Anchorage, Alaska, for Appellee.

_____

**OPINION**

BUTZNER, Senior Circuit Judge:

The United States Coast Guard National Pollution Funds Center (NPFC or Fund Director) determined that some claims made by Gatlin Oil Company, Inc., for an oil spill were not compensable under the Oil Pollution Act (OPA), 33 U.S.C.A. § 2701 et seq. (West Supp. 1998). Gatlin Oil filed suit in the district court, which reversed the agency action, finding that the Fund Director had acted in an arbitrary and capricious manner and that Gatlin Oil was entitled to compensation for all its recovery costs and damages with interest. The district court remanded the case with directions for further fact finding and for reconsideration of Gatlin's claim in accordance with the court's opinion. The United States appealed. We vacate the district court's judgment and remand the case for further proceedings.

I

The district court's jurisdiction rests on 28 U.S.C.A. § 1331 (federal question) and 33 U.S.C.A. § 2717(b) (Oil Pollution Act).

Appellate jurisdiction rests on 28 U.S.C.A. § 1291 which authorizes appeals of final decisions. Although a district court's remand to an agency is not usually within the purview of section 1291, the Supreme Court has noted an exception that is applicable to this appeal. The Court explained that an order reversing an agency's denial of benefits and remanding for proceedings consistent with the

2

district court's opinion was a final appealable order within the meaning of section 1291. <u>Sullivan v. Finkelstein</u>, 496 U.S. 617, 625 (1990); <u>accord Hanauer v. Reich</u>, 82 F.3d 1304, 1306-07 (4th Cir. 1996).

Congress enacted the Oil Pollution Act (OPA or the Act) in the wake of the Exxon Valdez oil spill to provide a prompt, federally-coordinated response to oil spills in navigable waters of the United States and to compensate innocent victims. The Coast Guard administers the Act. The owner of an onshore facility is the party responsible for removal costs of a spill that discharges oil into navigable waters, or poses a substantial threat to do so, and for damages. §§ 2701(32)(B), 2702. If, however, the owner of the facility proves that a third party caused the spill, the owner is afforded a complete defense. §§ 2702(d)(1)(A), 2703(a)(3). The Act also created the Oil Spill Liability Trust Fund (Fund) for the payment of uncompensated removal costs that are consistent with the National Contingency Plan (Plan) and for the payment of uncompensated damages. §§ 2712(a)(3),(4), 2713(b)(1)(B). A responsible party that has been exonerated may claim compensation from the Fund for removal costs and damages. § 2708(a)(1). It is the amount of compensation that is at issue in this case.

II

On March 13, 1994, near midnight, a vandal jammed open seven of Gatlin's above-ground fuel storage tanks causing an oil spill estimated to be in the range of 20,000-30,000 gallons. Vapors from the discharged oil ignited a fire that burned for several hours before firemen were able to stop the flow of fuel and extinguish it. The fire destroyed a warehouse, the bulk plant, inventory, other property, loading dock, and several vehicles. The fire consumed a large part of the discharged fuel.

The local emergency response team initiated measures designed to prevent and mitigate the spread of discharged oil. State officials reported the spill to the National Response Center, and the Coast Guard dispatched the Marine Safety Response Team. The federal on-scene coordinator (FOSC or federal coordinator) conducted a complete survey of the facility. He estimated that there were approximately 5,500 gallons of oil in the surrounding ditches. He also

3

reported that 10 gallons of oil had seeped through dikes in the ditches to a creek that flowed to the North Prong of the Bay River.

The federal coordinator directed Gatlin Oil to perform several tasks in order to prevent further discharge of oil into navigable waters. He instructed Gatlin Oil to remove oil from the storm ditches and surface waters, construct under-flow dams in the storm ditches, and remove oil and oil-contaminated gravel from beneath two of the tanks. Gatlin immediately began some of these clean-up efforts. Compliance with the directives of the federal coordinator was confirmed on July 29, 1994.

Prior to his departure, the FOSC made arrangements with the North Carolina Department of Environmental Management (NCDEM or North Carolina authorities) to monitor the completion of clean-up efforts initiated by the federal coordinator. The North Carolina authorities added additional directives regarding the cleanup of soil and ground water contamination to comply with North Carolina law.

Gatlin Oil was entitled to a complete defense because an unknown vandal caused the oil spill, and it was also entitled to present a claim to the Fund for uncompensated removal costs and damages. It contends that it is entitled to all damages resulting from the discharge of oil and the ensuing fire. Gatlin Oil claimed $850,000 plus interest. The Coast Guard contends that Gatlin Oil is entitled to only $6,959 from the Fund.

The Coast Guard determined that Gatlin's damages were limited to those caused by the 10-gallon discharge into navigable waters, the 5,500 gallons of oil in the ditches, and the oil in the gravel under two tanks that threatened to discharge into navigable waters.

The district court reviewed the agency's decision under the arbitrary and capricious standard of the Administrative Procedure Act. See 5 U.S.C.A. § 706(2)(A). Agreeing with Gatlin Oil's position, the district court set aside the agency decision and remanded the case "for further factfinding and a determination of appropriate compensation in accordance with [the district court's] decision." The government's appeal followed.

4

III

Because, at this stage of the proceedings, this case turns on the proper interpretation of the Act, we review the district court's judgment de novo. The two-step process explained in Chevron U.S.A., Inc. v. National Resources Defense Council, Inc., 467 U.S. 837 (1984), governs review of an agency's statutory interpretation. First, we must determine "whether Congress has directly spoken to the precise question at issue." Id. at 842. When Congress's intent is clear, both the court and the agency must apply the statute as Congress intended. If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843.

The principal dispute between Gatlin and the Coast Guard pertains to the damages that are compensable within the meaning of section 2702. This controversy is fueled by an ambiguity that exists within the Act concerning the correct interpretation of the term "incident." The Act defines "incident" as

> any occurrence or series of occurrences having the same origin, involving one or more vessels, facilities, or any combination thereof, resulting in the discharge or substantial threat of discharge of oil.

§ 2701(14) (emphasis added).

The definition of "incident" is not the measure of removal costs and damages. To ascertain what removal costs and damages are compensable, one must turn to other sections of the Act.

Section 2702(a) provides:

> Notwithstanding any other provision or rule of law, and subject to the provisions of this chapter, each responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs

5

and damages specified in subsection (b) <u>that result from such incident</u>. (emphasis added).

Section 2702(b)(1)(B) provides:

> any removal costs incurred by any person for acts taken by the person which are consistent with the National Contingency Plan.

Section 2702(b)(2) includes damages for (B) real or personal property and (E) profits and earning capacity.

Gatlin Oil relies on the definition of incident in section 2701(14). In contrast, the Coast Guard interpreted section 2702(a) to compensate only removal costs and damages that resulted from the discharge of oil into navigable waters or from a substantial threat of discharge into navigable waters.

The Coast Guard has interpreted the Act to provide that only removal costs and damages that "<u>result from such incident</u>" are compensible. § 2702(a). The antecedent of "such incident" is the discharge or substantial threat of discharge into navigable waters or adjacent shorelines. <u>Black's Law Dictionary</u> 1432 (6th ed. 1990) defines "such" in the following terms:

> Of that kind, having particular quality or character specified. Identical with, being the same as what has been mentioned. Alike, similar, of the like kind. "Such" represents the object as already particularized in terms which are not mentioned, and is a descriptive and relative word, referring to the last antecedent.

<u>Accord A Dictionary of Modern Legal Usage</u> 849 (2d ed. 1995) ("[S]uch is a deictic term that must refer to a clear antecedent."). The Coast Guard's construction of section 2702(a) is permissible because it is gramatically correct and it accommodates the purpose of the Act. Consequently, we adopt it. <u>See Chevron</u>, 467 U.S. at 843. We hold that the removal costs and damages specified in section 2702(b) are those that result from a discharge of oil or from a substantial threat of a discharge of oil into navigable waters or the adjacent shoreline.

IV

The Oil Spill Liability Trust Fund is charged with the payment of claims for removal costs determined by the President to be consistent with the National Contingency Plan and for uncompensated damages. § 2712(a)(4). The National Contingency Plan is established by 40 CFR Part 300 for the removal of oil and hazardous substances. Its scope includes discharges of oil into navigable waters of the United States and on adjoining shorelines. 40 CFR § 300.3(a)(1). The Fund is created by 26 U.S.C.A. § 9509. The Plan authorizes the Secretary of Transportation to establish the National Pollution Funds Center. 40 CFR § 300.5 at 12.

The Act requires the President to promulgate regulations for use of the Fund. § 2712(e). The validity of these regulations is not an issue in this case. See § 2717(a). Gatlin Oil's claim for removal costs and damages had to be presented to the Fund for adjudication pursuant to the regulations promulgated by the President. §§ 2712(a)(4), 2713(e).

The regulations provide for the adjudication of claims authorized to be presented to the Fund for

> certain uncompensated removal costs and uncompensated damages resulting from the discharge, or substantial threat of discharge, of oil from a . . . facility into or upon the navigable water, [and] adjoining shoreline . . . .

33 CFR § 136.1(a)(1). The Plan authorizes the Coast Guard to predesignate an on-the-scene coordinator to coordinate and direct federal responses to an oil spill 40 CFR Pt. 300 App E § 3.3.1. The regulations designate this person as the Federal On-Scene Coordinator (FOSC or federal coordinator). 33 CFR § 136.5(b). The claimant bears the burden of providing all evidence deemed necessary by the Fund Director to support its claim. 33 CFR § 136.105.

The regulations also stipulate the claimants' entitlement to compensation for removal costs from the Fund. Section 136.205 provides:

> The amount of compensation allowable is the total of uncompensated reasonable removal costs of actions taken

7

that were determined by the FOSC to be consistent with the National Contingency Plan or were directed by the FOSC. Except in exceptional circumstances, removal activities for which costs are being claimed must have been coordinated with the FOSC.

Sections 2702, 2712(a)(4) and 2713(e) of the Act and section 136.205 of the regulations indicate that the Fund is not a substitute for a tortfeasor. The owner of property that is harmed by a tortfeasor may have a valid claim against the tortfeasor, but its claim against the Fund is governed by the Act, particularly sections 2702 (Elements of liability) and 2712 (Uses of Fund), and pertinent regulations.

The Fund Director explained the rationale of his decision as follows: "OPA under 33 USC 2712 allows for the payment from the Oil Spill Liability Trust Fund (OSLTF) only for removal costs and damages set forth in 33 USC 2702 that result from a discharge or substantial threat of discharge into navigable waters." JA 204. The Fund Director's rationale is consistent with the Coast Guard's construction of the Act which we adopted in Part III of this opinion. The Fund Director reduced Gatlin Oil's claim for removal costs to compensate only items that the federal coordinator determined were consistent with the National Contingency Plan or that the federal coordinator directed. See §§ 136.203 (burden of proof), 136.205 (compensation allowable). The Fund Director allowed removal costs of $2,500. With regard to loss of earnings and earning capacity, the Fund Director allowed $4,459 for the time it took Gatlin Oil to carry out the directions of the federal coordinator. The compensation must be reasonable.

On remand the district court should determine whether the Fund Director's allowance of compensation was reasonable. See 33 CFR §§ 136.205, 136.235. Gatlin Oil is entitled to full compensation for removal costs that the federal coordinator determined were consistent with the National Contingency Plan and for costs resulting from actions he directed. Gatlin Oil is also entitled to full compensation for loss of earnings and earning capacity caused by the necessity to carry out the directions of the federal coordinator, including removal of gravel under two of the tanks. Furthermore, the underlying findings

8

of the federal coordinator must not be arbitrary, capricious, or an abuse of discretion. See 5 U.S.C.A. § 706(2)(A).

As a matter of law, Gatlin Oil cannot recover from the Fund compensation for fire damage because the evidence did not establish that the fire caused the discharge of oil into navigable waters or posed a substantial threat to do so. See § 2702(a).

Gatlin Oil relies on Petition of Cleveland Tankers, Inc., 791 F. Supp. 669 (E.D. Mich. 1992). This case is the only example of an oil spill and a fire that Gatlin Oil has found; it claims that its situation is analogous. Appellee's brief 23-24.

Petition of Cleveland Tankers involved a Petition From or Limitation of Liability filed in admiralty by the owners of a tanker that caught fire at a dock while unloading gasoline. A marina claimed damages, but its claim was filed late. The shipowner sought dismissal of the marina's claim under Rule F(5) of the Supplemental Rules for Admiralty and Maritime Claims. The district court nevertheless allowed the claim to be filed under Rule F(4) because good cause was shown for the untimely filing and the limitation proceeding was pending. The opinion also noted that section 2702(b)(2)(E) of OPA allows damages against the responsible party for injury to property and that the marina had alleged such damage. The court, however, did not undertake in the reported proceeding to adjudicate the marina's damage either in the admiralty case or under OPA. The marina did not seek compensation from the Fund. 791 F. Supp. at 677-79. At the most, all that can be gleaned from the case is that the marina's claim against the shipowner was not dismissed. How it fared in further proceedings is not shown.

V

Gatlin Oil also seeks reimbursement for the costs of complying with the directives of the North Carolina enviromental officials. These state directives required Gatlin Oil to clean up soil and groundwater contamination. Gatlin Oil argues that the federal coordinator by virtue of his position assumed responsibility for all of the cleanup. Gatlin Oil also asserts that the entire oil spill posed a substantial threat of oil reaching navigable waters. In contrast, the Coast Guard maintains that

9

the Fund is not liable for the work performed pursuant to North Carolina directives.

Both the Act and the regulations support the Coast Guard's position. Section 2718 of the Act provides in part:

> (a) Preservation of State authorities . . .
>
> Nothing in this chapter . . . shall--
>
> (1) affect, or be construed or interpreted as preempting, the authority of any State or political subdivision thereof from imposing any additional liability or requirements with respect to--
>
> (A) the discharge of oil or other pollution by oil within such State, or
>
> (B) any removal activities in connection with such a discharge . . . .

The Act authorizes proceedings by which the Fund may be obligated to assist states. Section 2712(d)(1) provides that "upon request of the Governor of a State" or pursuant to an agreement between the President and a Governor, the President may obligate the Fund for removal costs incurred by a state. Gatlin Oil has not shown any request by the Governor of North Carolina or an agreement between the Governor and the President. Procedures for state access to the Fund are set forth in 33 CFR Part 133. Gatlin did not introduce any evidence showing compliance with either the Act or the regulations concerning cleanup costs that the North Carolina authorities directed. Also, Gatlin Oil has not proved that the contamination of the soil and groundwater, which was required by North Carolina, posed a substantial threat of a discharge of oil into navigable waters. Moreover, Gatlin's theory that the federal coordinator is deemed to have directed all state and federal removal costs is contrary to 33 CFR § 136.205. The federal coordinator did not determine that the cleanup ordered by North Carolina authorities was consistent with the National Contingency Plan, and he did not direct Gatlin Oil to comply with North

10

Carolina's directives. We conclude that the Fund is not liable for Gatlin's expenditures that were directed by North Carolina authorities.

VI

Included in the Act's definition of damages are the costs of assessing those damages. See § 2701(5). These costs must be the "reasonable costs of estimating the damages claimed," not including attorney's fees or the administrative costs of preparing the claim. 33 CFR § 136.105(d)(8). Gatlin Oil calculated costs under the mistaken assumption that the Fund should compensate it for all of its damages. On remand it should be given the opportunity to recalculate its claim for assessment costs pertaining to those damages recognized by this opinion.

VII

Gatlin Oil is not entitled to an award of interest against the United States. The no-interest rule prohibits an award of interest against the government "in the absence of an express waiver of sovereign immunity from an award of interest." Library of Congress v. Shaw, 478 U.S. 310, 311 (1986). Traditionally, Congress has manifested intent to make such a waiver expressly. Id. at 318-19. An express waiver of immunity from interest is not found in the Oil Pollution Act.

The Supreme Court has recognized that the no-interest rule is inapplicable in situations where the government has "cast off the cloak of sovereignty and assumed the status of a private commercial enterprise." Id. at 317 n.5. This language is consistent with the Court's holding in Standard Oil Co. v. United States, 267 U.S. 76 (1925). In that case, the government issued insurance policies which insured a steamship and her freight against war risks. Id. at 76-77. When loss occurred, the payment of interest was questioned. The policies issued by the government indicated that "claims would be paid within thirty days after complete proofs of interest and loss had been filed . . . ." Id. at 79. Furthermore, the insured were permitted to sue the government under the policy "in case of disagreement." Id. The Court determined that the government had assumed the status of a private insurance company.

11

With respect to the Oil Pollution Act, the government does not issue any policies, nor does it assume any risk on behalf of claimants. The Act provides limited compensation when the party responsible for an oil spill is unavailable. It does not function as a private insurance company. For these reasons, Gatlin's reliance on Standard Oil is misplaced.

Nor does the Postal Reorganization Act of 1970 support Gatlin Oil. In Loeffler v. Frank, 486 U.S. 549 (1988), Congress established that the Postal Service's liability was equivalent to any other business. Id. at 556. Because Congress "launch[ed] the Postal Service into the commercial world," it is presumed that Congress"waived any otherwise existing immunity of the Postal Service from interest awards." Id. (citations omitted); accord Maksymchuk v. Frank, 987 F.2d 1072, 1076-77 (4th Cir. 1993). The Court held that the Postal Service could be subjected to an interest award in a Title VII suit due to congressional waiver of immunity.

In contrast, there is no evidence that Congress intended the Oil Spill Liability Trust Fund to function like a commercial enterprise or to have liability like that of any other business. An award of interest against the Fund does not appear to have been contemplated by Congress. The Act contains no provisions that would make such an award possible.

The Act does establish that a responsible party (or the responsible party's guarantor) is "liable to a claimant for interest on the amount paid in satisfaction of a claim . . . ." § 2705(a). A "responsible party," in the case of an onshore facility like Gatlin Oil, is defined as "any person owning or operating the facility, except a Federal agency, State . . . ." § 2701(32)(B). The federal government is not included in the definition of responsible party. Id.

While the government is not liable for interest under the Act, it can recover interest as a cost incurred by the Fund. The Attorney General is authorized to commence an action on the Fund's behalf to recover compensation paid by the Fund, as well as costs incurred by the Fund. See § 2715(c). This section expressly permits the Fund to recover interest on the money that it had expended. Section 2715(c) does not

12

do any more than provide for the reimbursement of the Fund for expenses it should not have to bear.

We conclude that the Shaw no-interest rule applies to this case.

The district court's judgment is vacated, and this case is remanded for further proceedings consistent with this opinion.

VACATED AND REMANDED

NIEMEYER, Circuit Judge, concurring in part and dissenting in part:

I concur in Part VII of the majority's opinion, holding that Gatlin Oil is not entitled to an award of interest against the United States. I differ with the majority, however, on the proper reading of 33 U.S.C. § 2702 of the Oil Pollution Act ("OPA"), which controls the disposition of Gatlin Oil's claim for removal costs and damages resulting from vandals' opening a spigot and setting fire at Gatlin Oil's facility.

Under 33 U.S.C. §§ 2708 and 2713 of the OPA, Gatlin Oil is entitled to removal costs and damages from the Oil Spill Liability Trust Fund ("Fund") if it is a party responsible for removal costs and damages but has a defense that the discharge or threat of discharge of oil into navigable waters was caused by the act or omission of a third party. In that case, the responsible party would be entitled to recover from the Fund "removal costs and damages . . . that result from such incident." 33 U.S.C. § 2702(a). As a defined term in the OPA, "incident" means "any occurrence or series of occurrences having the same origin, involving one or more vessels, facilities, or any combination thereof, resulting in the discharge or some substantial threat of discharge of oil." 33 U.S.C. § 2701(14). Accordingly, I would hold that the vandals' opening of an oil storage tank spigot and setting fire to the oil is an incident for which Gatlin Oil would be entitled to both its removal costs and its damages.

The majority reads "incident" as used in § 2702(a) to have as its antecedent the discharge of oil or the threat of discharge of oil, as referred to earlier in § 2702(a). Its argument is based on the fact that

13

the word "incident" is modified by the word"such," suggesting the limitation of that term in this paragraph to the antecedent as an example of "incident."

While I remain convinced that incident must mean the defined term, even if the interpretation given by the majority is the correct one, Gatlin would nevertheless be entitled to its damages because those damages "resulted from" the vandals' discharge of oil, a discharge which both polluted navigable waters and immediately <u>threatened</u> to pollute navigable waters. That a fire ensued after the oil spigot was opened should have no bearing on Gatlin Oil's ability to recover from the Fund. The statutory test -- whether fire damage "resulted from" the discharge of oil that threatened to pollute navigable waters -- was still satisfied. For these reasons, I would permit Gatlin Oil to recover all damages flowing from the oil spill incident that occurred on March 13, 1994, and not restrict its recovery to a portion of its removal costs.

I would, however, remand this appeal to the district court for recalculation of Gatlin Oil's lost earnings resulting from the discharge of oil. The district court's prior calculation resulted in an award of speculative damages which I believe is unsupported by the record and in contravention of § 2702(b)(2)(E).

14