United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 23, 2006**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 04-31069

In Re: In the Matter of the Complaint of TAIRA LYNN MARINE
LIMITED NUMBER 5, LLC, as Owner of the M/V MR. BARRY for
Exoneration From or Limitation of Liability

TAIRA LYNN MARINE LIMITED NUMBER 5, LLC; ET AL.,

Plaintiffs-Appellants,

versus

JAYS SEAFOOD, INC.; ET AL.,

Defendants,

E. J. MASON, Individually
and doing business as Mason Seafood,

Defendant - Claimant - Third Party Plaintiff -Appellee,

COASTLINE MARINE, INC.; MARINE TURBINE TECHNOLOGIES, LLC; MTT
PROPERTIES, LLC; MTT MANUFACTURING, LLC; MORTON INTERNATIONAL,
INC.; CVD, INC., doing business as Rohm & Haas Advanced
Materials; TWIN BROTHERS MARINE; COY REEKS, Individually
and doing business as Riverfront Seawalks and Bulkheads; TWIN
BROTHERS MARINE, CORP.; BAGALA'S QUALITY OYSTERS, INC.; DOUGLAS
OLANDER, Individually and doing business as Big D's Seafood;
CRYSTAL OLANDER, Individually and doing business as Big D's
Seafood; IVO JURISICH, Individually and doing business as Blue
Gulf Seafood, Inc.; TOMMY KLEINPETER, Individually and on behalf
of Cajun Wireline, Inc.; NORTH AMERICA SALT CO.; CAREY SALT, CO.;
PAM DORE, Individually and on behalf of Cove Marina; LEGNON
ENTERPRISES, INC.,

Defendants - Claimants - Cross Claimants -Appellees,

versus

WATER QUALITY INSURANCE SYNDICATE,

Defendant-Claimant-Appellant,

LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT,

Defendant-Counter Defendant-Cross Defendant-Appellant,

KIRBY INLAND MARINE LP, formerly known as Kirby Inland Marine, Inc.,

Third Party Defendant-Cross Defendant-Appellant.

In Re: In the Matter of the Complaint of Kirby Inland Marine, LP, formerly known Kirby Inland Marine, Inc., as Owner of the T/B Kirby 31801 for Exoneration From or Limitation of Liability

KIRBY INLAND MARINE, formerly known as Kirby Inland Marine, Inc. as owner of the T/B Kirby 31801,

Plaintiff - Cross Defendant - Appellant,

versus

DAVID J. ANDRAS, JR.; ET AL.,

Defendants,

E. J. MASON, Individually and doing business as Mason Seafood,

Defendant - Claimant - Appellee,

COASTLINE MARINE, INC.; MARINE TURBINE TECHNOLOGIES, LLC.; MTT PROPERTIES, LLC; MTT MANUFACTURING, LLC; MORTON INTERNATIONAL, INC.; CVD, INC., doing business as Rohm & Haas Advanced Materials; TWIN BROTHERS MARINE, INC.; COY REEKS, Individually and doing business as Riverfront Seawalks and Bulkheads; TWIN BROTHERS MARINE, CORP.; BAGALA'S QUALITY OYSTERS, INC.; DOUGLAS OLANDER, Individually and doing business as Big D's Seafood; CRYSTAL OLANDER, Individually and doing business as Big D's Seafood; IVO JURISICH, Individually

2

and doing business as Blue Gulf Seafood, Inc.; TOMMY KLEINPETER, Individually and on behalf of Cajun Wireline, Inc.; NORTH AMERICA SALT CO.; CAREY SALT CO.; PAM DORE, Individually and on behalf of Cove Marina; LEGNON ENTERPRISES, INC.,

Defendants - Claimants - Cross Claimants -Appellees.

---

Appeal from the United States District Court
for the Western District of Louisiana

---

Before BENAVIDES, STEWART, and OWEN, Circuit Judges.

CARL E. STEWART, Circuit Judge:

The primary issue on appeal is whether claimants who suffered no physical damage to a proprietary interest can recover for their economic losses as a result of a maritime allision. Fourteen businesses and business owners brought claims under the general maritime law, the Oil Pollution Act of 1990 (OPA), 33 U.S.C. §§ 2701-2761 (2000), the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601-9675 (2000), and state law. The appellants filed motions for partial summary judgment to dismiss these claims, which the district court denied. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 19, 2001, the M/V MR. BARRY and its tow, the T/B KIRBY 31801, allided with the Louisa Bridge in St. Mary Parish, Louisiana. Kirby Inland Marine, L.P. ("Kirby Inland") owned the barge; Taira Lynn Marine, Inc. ("Taira Lynn") owned and operated the tug; and the Louisiana Department of Transportation and Development ("the State") owns the bridge. The cargo on the barge, a gaseous mixture of propylene/propane, discharged into the air as a result of the allision.

3

Consequently, the Louisiana State Police ordered a mandatory evacuation of all businesses and residences within a certain radius of the Louisa Bridge.

Taira Lynn initiated the underlying litigation under the Limitation of Liability Act, 46 U.S.C. app. § 183 (2000), in which several hundred claims were filed. The original proceeding also consolidated two declaratory judgment actions involving insurance coverage issues. Fourteen businesses and business owners (collectively, "Claimants") that are parties to this appeal filed claims in the limitation action seeking to recover damages under the general maritime law, OPA, CERCLA, and state law.

Because of the complexity of the case, the district court referred discovery to the magistrate judge who limited the initial phase of discovery to the claims alleging solely economic loss. Taira Lynn, Kirby Inland and the State then filed motions for partial summary judgment on the grounds that Claimants' recovery for economic losses unaccompanied by damage to a proprietary interest is barred by *Louisiana ex. rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1023 (5th Cir. 1985) (en banc). Those claims alleging direct property damage and/or personal injury as well as economic loss were not included in the motions.

The district court concluded that it was "foreseeable that an allision between a barge and the Louisa swing bridge would disrupt the only means of ingress and egress to Cypremore [sic] Point." *In re Taira Lynn Marine Limited No. 5*, 349 F. Supp. 2d 1026, 1032 (W.D. La. 2004). Reasoning that the claims were confined to a limited geographic region and that Claimants were making commercial use of the bridge, the court endorsed a "geographic exception" to the rule barring recovery for economic losses absent physical damage and concluded that the claimants alleging solely economic losses should have an opportunity to present their claims in court. *Id.* at 1035. The court

4

concluded that not all of the claimants alleged purely economic losses and thus, those claims survived the motion for summary judgment. Accordingly, the court denied the motions for partial summary judgment as to each of the fourteen claimants. The court also concluded that the OPA and CERCLA claims were not ripe for summary judgment because they raised genuine issues of material fact and were outside of the scope of discovery. Taira Lynn, Kirby Inland, the State, and Water Quality Insurance Syndicate (collectively, "Appellants") appeal the district court's rulings. The district court certified the judgment as appealable pursuant to 28 U.S.C. § 1292(b) and this court granted permission to appeal.

Before we address the claims at issue, we find it necessary to emphasize what is *not* before us. Appellants' motion for summary judgment did not include claims involving personal injury, physical damage, or the claims of commercial fishermen. Thus, the only claims before this court are claims for purely economic losses.

## II. STANDARD OF REVIEW

This court reviews a district court's summary judgment decision de novo, applying the same legal standards as the district court. *Am. Home Assurance Co. v. United Space Alliance, LLC.*, 378 F.3d 482, 486 (5th Cir. 2004). "A summary judgment motion is properly granted only when, viewing the evidence in the light most favorable to the nonmoving party, the record indicates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## III. CLAIMS PURSUANT TO GENERAL MARITIME LAW

A.    Applicable Law

It is unmistakable that the law of this circuit does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit. In *Robins Dry Dock & Repair v. Flint*, 275 U.S. 303, 309 (1927), the Supreme Court held that a tortfeasor is not liable for negligence to a third person based on his contract with the injured party. In *Louisiana ex. rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1023 (5th Cir. 1985) (en banc), this court concluded that *Robins* is a pragmatic limitation on the doctrine of foreseeability. We reasoned that "[i]f a plaintiff connected to the damaged chattels by contract cannot recover, others more remotely situated are foreclosed *a fortiori*." 752 F.2d at 1024. Accordingly, we reaffirmed the rule that there can be no recovery for economic loss absent physical injury to a proprietary interest. *Id.*

B. Summary of the Claims

Because of the number of parties involved in this appeal, we find it helpful to briefly summarize the underlying claims. Cajun Wireline, Inc. ("Cajun"), a full service slick wireline provider, claims that three of its jack up boats could not perform their duties due to the allision and subsequent evacuation. Coastline Marine, Inc. ("Coastline"), a pile driving business, claims it was unable to perform work on its contracts as a result of the evacuations. Pam Dore, doing business as Cove Marina ("Cove Marina"), claims loss of revenues and sales from a convenience store as a result of the evacuation. Legnon Enterprises ("Legnon") claims lost charter revenues and lost sales and revenues due to the evacuation. Coy Reeks, doing business as Riverfront Seawalls and Bulkheads ("Riverfront"), claims he had to leave his equipment on the island during the evacuation and as a result could not work for one week. Twin Brothers Marine ("Twin Brothers"), a fabrication and dock facility, claims it was forced to halt work in progress for two construction projects. Marine Turbine Technologies ("MTT") claims that it suffered physical damage in the form of toxic gas permeation

6

on its property. North American Salt Company/Carey Salt Company ("North American") claims it had to suspend operations due to the discharge of the gas into the air. Morton International ("Morton") claims it began to shut down operations before the evacuation order was issued and that its wholly owned subsidiary, CVD Incorporated d/b/a Rohm & Haas Advanced Materials ("Advanced Materials"), suffered physical damage. Advanced Materials is a chemical vapor deposition facility that manufactures material used to make specialty lenses for military equipment and other purposes. It claims that two of its manufacturing runs had to be prematurely terminated and the company lost the materials in those runs and could not sell the products. Big D's Seafood ("Big D's"), Blue Gulf Seafood, Inc. ("Blue Gulf"), and Bagala's Quality Oysters ("Bagala's") claim lost revenues from their wholesale fishing operations. Mason Seafood ("Mason") claims it lost eighty-eight boxes of dressed crabs that spoiled in a freezer when law enforcement officials shut off the electricity during the evacuation.

C. Analysis

1. *Claimants alleging no physical damage*

The district court concluded that Cajun, Coastline, Cove Marina, Legnon, Riverfront, and Twin Brothers suffered no physical damage; however, the court endorsed a geographic exception to the *TESTBANK* rule and concluded that the claimants should have the opportunity to prove that their damages were foreseeable and proximately caused by the allision. The court concluded that Blue Gulf, Big D's and Bagala's either suffered physical damage or satisfied the commercial fishermen exception[1] to *TESTBANK*, and denied summary judgment as to those claims as well. The district

---

[1] Relying, inter alia, on the Ninth Circuit's decision in *Union Oil Co. v. Oppen*, 501 F.2d 558 (9th Cir. 1974), the district court in *TESTBANK*, denied summary judgment as to the commercial fishermen who "were exercising their public right to make a commercial use of those waters."

court concluded that MTT's and North American's claims of physical damage in the forms of the presence of gas on their properties satisfied *TESTBANK*; accordingly, it denied summary judgment. The court also concluded that Morton, along with Advanced Materials, satisfied the physical damage requirement. (Advanced Materials's claims are addressed below.)

Appellants' argue that the district court erred in denying their motions for partial summary judgment because these claimants did not suffer physical damage to a proprietary interest, and thus, their claims for economic loss are barred by our decision in *TESTBANK*. Claimants make several arguments in support of the district court's denial of summary judgment. Cajun, Coastline, Cove Marina, Legnon, Riverfront and Twin Brothers argue that their claims should be subject to traditional foreseeability/proximate cause evaluations, asserting that their businesses are located in close proximity to the accident site and that they all worked and/or resided within the evacuated area. They also argue that this case is distinguishable from *TESTBANK* because that case involved forty-one lawsuits, whereas here, fourteen claims are the subject of these motions for summary judgment. Blue Gulf and Big D's argue they sustained physical impact and damage from the allision and that they had to destroy or decontaminate their products and equipment. North American and MTT allege they suffered physical damage because the gaseous cargo became physically present on their properties.

---

*Louisiana ex rel. Guste v. M/V TESTBANK* ,524 F. Supp. 1170, 1173-74 (E.D. La. 1981). On appeal, we recognized the argument in favor of an exception for commercial fishermen, but left the contours of such an exception for another day because the claims of the commercial fishermen were not before us. *See TESTBANK*, 752 F.2d at 1027 n.10.

North American and Morton[2] claim that they shut down operations in order to prevent damage to their equipment and products.

Contrary to the district court's conclusion, twelve of the fourteen businesses that are parties to this appeal suffered no physical damage attributable to the allision and thus, their claims are barred by *TESTBANK*. There is no geographic exception to the *TESTBANK* rule and there is no exception based on the number of claimants. The *TESTBANK* court expressly rejected the case-by-case approach urged by Claimants, and adopted by the district court in the case at bar. In *Reserve Mooring Inc. v. American Commercial Barge Line, LLC*, 251 F.3d 1069, 1071-72 (5th Cir. 2001), this court reversed the district court's conclusion that *TESTBANK* "is merely an application of the general requirement that damage be foreseeable to be recoverable in tort," and concluded that "physical injury to a proprietary interest is a prerequisite to recovery of economic damages in cases of unintentional maritime tort." Additionally, as we explained above, Bagala's, Big D's and Blue Gulf's claims, if any, as commercial fishermen were not included in the motions for partial summary judgment; only their claims as wholesale fishermen were included. Accordingly, the district court erred in concluding that these claimants satisfied the commercial fishermen exception to *TESTBANK*. Their claims are for economic losses from their wholesale operations, and thus, they are barred by *TESTBANK*. While other jurisdictions may have abandoned or relaxed the bright line rule of *Robins* and *TESTBANK*, this circuit "has not retreated from *TESTBANK*'s physical injury requirement," *Reserve Mooring*, 251 F.3d at 1071. Therefore, the district court erred in denying Appellants' motions for partial summary judgment as to Cajun, Coastline, Cove Marina, Legnon, Riverfront,

---

[2]Because we conclude that the district court erred in denying Appellants' motions for summary judgment as to Advanced Materials's claims, we need not address Morton's argument based on its ownership of its Advanced Materials's facilities.

9

Twin Brothers, Blue Gulf, Big D's and Bagala's. These claimants have not suffered physical damage; therefore, their claims are barred by our decision in *TESTBANK*.

Likewise, the district court erred in concluding that MTT, North American, and Morton suffered physical damage sufficient to satisfy *TESTBANK*. MTT's and North American's arguments that the physical presence of the gas on their property satisfies *TESTBANK*'s physical damage requirement are unpersuasive. These claimants have not raised an issue of fact as to whether the gas physically damaged their property nor caused any personal injury; indeed, as noted above, such claims were not subjects of Appellants' motions for partial summary judgment. Nor are we persuaded by North American's and Morton's arguments that they mitigated damages by shutting down their operations.

In *Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp.*, 71 F.3d 198 (5th Cir. 1995), an allision between a barge and a platform damaged a gas riser, owned by Houston Pipeline Company, which was connected to the platform owned by Corpus Christi. Realizing the allision was about to occur, workers on the Corpus Christi platform shutdown operations to prevent fire or explosion. During the two weeks it took to repair Houston Pipeline's gas riser, Corpus Christi flared gas to prevent loss of its wells. This court concluded that "[e]xcept for its acts in mitigation, Corpus Christi would have suffered great physical damages to its wells." *Id.* at 202. Accordingly, the court affirmed the district court's award of damages for the costs incurred in flaring the gas. *Id.* Nevertheless, the court disallowed Corpus Christi's damages resulting from the inability to produce and sell its gas during the repair period, reasoning that "[t]he additional economic losses that Corpus Christi seeks to recover occurred solely and only because of the physical damage *that was done to Houston's property*," and that "Corpus Christi lost its gas sale profits because it could not use the

10

pipeline, not because it was flaring its own gas." *Id.* Unlike the plaintiffs in *Corpus Christi*, North American and Morton did not lose any of the salt in their mines and they are not claiming costs of mitigation. Instead, their claims are for lost revenues caused by the inability to use their facilities; such claims are not recoverable. *See id.* at 202. Accordingly, the district court erred in denying Appellants' motions for partial summary judgment as to MTT, North American, and Morton.

Finally, we note that Claimants may not recover under state law. *See IMTT-Gretna v. Robert E. Lee SS*, 993 F.2d 1193, 1195 (5th Cir. 1993) ("Maritime law specifically denies recovery to non proprietors for economic damages. To allow state law to supply a remedy when one is denied in admiralty would serve only to circumvent the maritime law's jurisdiction."), *supplemented by*, 999 F.2d 105 (5th Cir. 1993). These twelve claimants have simply not raised an issue of fact as to whether their economic losses resulted from physical damage to their proprietary interests. Accordingly, the district court erred in denying Appellants' motions for partial summary judgment.

2. *Claimants alleging physical damage*

As noted above, Mason and Advanced Materials claim to have suffered physical damage. Mason claims it lost eighty-eight boxes of dressed crabs that spoiled in a freezer when law enforcement officials shut off the electricity during the evacuation. Advanced Materials claims that two manufacturing runs had to be prematurely terminated and the company lost the materials in those runs and could not sell the products. The district court concluded that Mason's and Advanced Materials's damages met the physical damage requirement of *TESTBANK*. Appellants argue that even if Mason and Advanced Materials suffered damage, the damage was not directly caused by the allision and was unforeseeable. Accordingly, they contend the district court erred in denying their motions for summary judgment as to these claims as well. Mason and Advanced Materials argue that their

11

damages were foreseeable and that foreseeability should not be determined on a motion for summary judgment.

Contrary to the district court's conclusion, neither of these claimants suffered physical damage as a result of the allision. Mason's crabs spoiled because the electricity was turned off during the evacuation, not because of contact with the barge, the bridge, or the gaseous cargo. Likewise, Advanced Materials claims losses from its inability to sell products that were in the process of being manufactured; it is not claiming that its property was damaged as a direct result of the allision. Claimants' reliance on *Consolidated Aluminum Corp. v. C.F. Bean Corp.* (*Consolidated I*), 772 F.2d 1217 (5th Cir. 1985) is misplaced. There, a dredge struck and ruptured a pipeline, which caused a reduction in gas pressure and supply to Consolidated's power plant. We held that *TESTBANK* did not bar recovery because Consolidated suffered physical damage to its equipment. *Id.* at 1222. Unlike the circumstances presented in *Consolidated I*, here, the allision did not physically cause the disruption in electrical power nor did it physically impact Advanced Materials's facilities. Accordingly, Advanced Materials and Morton have not raised a genuine issue of material fact as to whether they suffered physical damage to a proprietary interest as a result of the allision.

Moreover, even if we were to conclude that Mason's and Advanced Materials's inability to sell their products qualified as physical damage for purposes of *TESTBANK*, they would not be entitled to recover because their damages were not foreseeable. In *Consolidated Aluminum Corp. v. C.F. Bean Corp.* (*Consolidated II*), 833 F.2d 65, 68 (5th Cir. 1988), we stated:

> We perceive a harm to be the foreseeable consequence of an act or omission if harm of a general sort to persons of a general class might have been anticipated by a reasonably thoughtful person, as a probable result of the act or omission, considering the interplay of natural forces and likely human intervention.

12

We reasoned that injury to property and persons from the escaping gas or from a fire were examples of foreseeable consequences of negligent dredging. *Id.* Therefore, we concluded that, even though Consolidated suffered physical damage, the physical damage was unforeseeable. *Id.* In the instant case, as in *Consolidated II*, the foreseeable harms as a result of escaping gas would likely be damage to property and people from the gas or from a fire. Further, in the case at bar, the connection between the loss of electricity and the allision is even more remote than that between the reduction in gas supply and the negligence in *Consolidated II*. In *Consolidated II*, the negligent dredging damaged a gas pipeline which disrupted the flow of gas to electric turbines causing them to shut down. Here, the barge allided with a bridge, causing the release of gas, which resulted in a mandatory evacuation during which the law enforcement officials turned off the electricity. The spoiling of Mason's crabs and the premature shut down of Advanced Materials's manufacturing run due to the evacuation and loss of electricity were simply not foreseeable results of the release of the gaseous cargo. Accordingly, the district court erred in denying Appellants' motion for partial summary judgment as to the claims of Mason and Advanced Materials.

## IV. CLAIMS PURSUANT TO CERCLA

CERCLA provides a remedy to a claimant seeking to recover response costs for removal and remediation of hazardous substances released into the environment. 42 U.S.C. §§ 9601-9675. To establish a prima facie case of liability under CERCLA, a plaintiff must prove: (1) that the site in question is a "facility" as defined in § 9601(9); (2) that the defendant is a responsible person under § 9607(a); (3) that a release or threatened release of a hazardous substance has occurred; and (4) that the release or threatened release has caused the plaintiff to incur response costs. *Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 668 (5th Cir. 1989). "In enacting CERCLA, Congress intended 'to

13

facilitate the prompt cleanup of hazardous waste sites and to shift the cost of environmental response from the taxpayers to the parties who benefitted from the wastes that caused the harm.'" *Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d 355, 364 (5th Cir. 2005) (quoting *OHM Remediation Servs. v. Evans Cooperage Co.*, 116 F.3d 1574, 1578 (5th Cir. 1997).

The district court concluded that the CERCLA claims were not ripe for summary judgment because the claims raised genuine issues of material fact and were outside the scope of discovery. Appellants assert that private causes of action under CERCLA are limited to response costs and that Claimants did not incur any response costs recognized by CERCLA because they did not act to remove contamination or remedy the direct effect of contamination. Claimants argue CERCLA confers a private right of action on any person who has incurred the necessary costs of response consistent with the national contingency plan. They argue the evacuation was ordered by the State Police and the Sheriffs of two parishes and that the evacuation was related to the clean up activities.

Claimants have not raised a genuine issue of material fact as to whether they are entitled to recover under CERCLA. "To justifiably incur response costs, one necessarily must have acted to contain a release threatening the public health or the environment." *Amoco Oil*, 889 F.2d at 669-70. The claims at issue here are for economic losses resulting from the evacuation. None of the claimants has even alleged that it incurred costs in acting to contain the gaseous cargo; therefore, none of the claimants is entitled to recover under CERCLA. The district court erred in denying Appellants' motions for partial summary judgment as to the claims brought pursuant to CERCLA.

## V. CLAIMS PURSUANT TO OPA

OPA provides that "[n]otwithstanding any other provision of law . . . each responsible party for a vessel or a facility from which oil is discharged . . . into or upon the navigable waters or

14

adjoining shorelines . . . is liable for the removal costs and damages specified in subsection (b) of this section that result from such incident." 33 U.S.C. § 2702(a). Section 2702(b)(2)(B) allows recovery of "[d]amages for injury to, or economic losses resulting from destruction of real or personal property, which shall be recoverable by a claimant who owns or leases that property." Section 2702(b)(2)(E) provides recovery of "[d]amages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property or natural resources, which shall be recoverable by any claimant."

The district court concluded that the OPA claims were not ripe for summary judgment because the claims raised genuine issues of material fact and were outside the scope of discovery. Appellants argue that OPA is inapplicable. Further, they contend that if OPA were applicable, Claimants could not recover because they have sustained no physical damage to their property and their economic damages were not the direct result of property damaged by an OPA event. Claimants respond that OPA is applicable because the gaseous cargo was a propylene/propane mix and that OPA does not require that the injury result from direct contact with a hazardous substance.

In order to recover under § 2702(b)(2)(B) a plaintiff must show that her property was damaged as a result of a release or threatened release of oil. Claimants have not raised an issue of fact as to whether the gaseous cargo caused damage to their property; accordingly, they are not entitled to recover under § 2702(b)(2)(B). This, however, does not end our inquiry because § 2702(b)(2)(E) allows a plaintiff to recover for economic losses resulting from damage to another's property. *See Ballard Shipping Co. v. Beach Shellfish*, 32 F.3d 623, 631 (1st Cir.1994) ("The House Conference Report makes clear that, under section 2702(b)(2)(E), '[t]he claimant need not be the owner of the damaged property or resources to recover for lost profits or income.'" (alteration in original) (citing

15

H.R. Conf. Rep. No. 101-653, 101st Cong., 2d Sess. 103 (1990), U.S. Code Cong. & Admin. News 1990, p. 722.)). *Contra In re Cleveland Tankers, Inc.*, 791 F. Supp. 669, 678-79 (E.D. Mich. 1992), (interpreting subsection (E) to require that the injury be to the *claimant's* property). Accordingly, we must decide whether Claimants' damages are recoverable under § 2702(b)(2)(E). Appellants contend that Claimants may not recover because the property damage was not caused by the gaseous cargo. Because we have not yet had occasion to consider this issue, we find the decision of the Fourth Circuit in *Gatlin Oil Co. v. United States*, 169 F.3d 207 (4th Cir. 1999), instructive.

In *Gatlin Oil*, vandals opened some of Gatlin Oil's above-ground fuel storage tanks causing an oil spill. Vapors from the oil ignited a fire that destroyed a warehouse, plant, inventory and other property. In order to prevent further discharge of oil, federal officials instructed Gatlin Oil to remove oil from storm ditches and surface waters and to take other preventative measures. Gatlin Oil presented a claim to the Oil Spill Liability Trust Fund for payment of uncompensated removal costs and damages, claiming damages resulting from the discharge of oil and the ensuing fire. The Coast Guard determined that Gatlin Oil's damages were limited to those caused by the discharge and the measures ordered by the federal officials to prevent discharge. The court held that as a matter of law Gatlin Oil could not recover compensation for fire damage because the evidence did not establish that the fire caused the discharge of oil into navigable waters or posed a threat to do so, as required by section 2702(a). *Gatlin Oil*, 169 F.3d at 212.

Claimants argue that *Gatlin Oil* is inapplicable because it involved a claim for recovery from the Oil Spill Liability Trust Fund, not a responsible party; however, the Fourth Circuit noted, "[t]he principal dispute between Gatlin and the Coast guard pertains to the damages that are compensable within the meaning of section 2702," *id.* at 210. Indeed, the court stated, "We hold that the removal

16

costs and damages specified in section 2702(b) are those that result from a discharge of oil or from a substantial threat of a discharge of oil into navigable waters or the adjacent shoreline." *Id.* at 211. We agree. Even assuming arguendo that OPA applies, none of the claimants has raised an issue of fact as to whether any property damage was caused by the pollution incident, i.e., the release of the gaseous cargo. A party is liable under OPA if, inter alia, the claimant's damages "*result from such incident*," i.e., the discharge or threatened discharge of oil. *See* 33 U.S.C. § 2702(a) (emphasis added); *Gatlin Oil*, 169 F.3d at 210-11 ("The Coast Guard has interpreted the Act to provide that only removal costs and damages that '*result from such incident*' are compensible [sic]." (emphasis in original) (citing § 2702(a))). Any property damage upon which Claimants must rely to recover under § 2702(b)(2)(E) did not result from the discharge or threatened discharge of oil. Claimants have not raised an issue of fact as to whether their economic losses are due to damage to property resulting from the discharge of the gas. Therefore, Claimants cannot recover under OPA and the district court erred in denying Appellants' motions for partial summary judgment.

## VI. CONCLUSION

For the foregoing reasons we REVERSE the district court's denial of Appellants' motions for partial summary judgment.

17