# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 10, 2022

Lyle W. Cayce
Clerk

No. 21-30520

XL Insurance America, Incorporated, as subrogee of
Boh Bros. Construction Company, L.L.C.,

*Plaintiff—Appellant*,

*versus*

Turn Services, L.L.C.,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:20-cv-427

Before Smith, Wiener, and Southwick, *Circuit Judges*.
Jacques L. Wiener, Jr., *Circuit Judge*:

Plaintiff-Appellant XL Insurance America, Inc. ("XL"), as subrogee of Boh Bros. Construction Co., L.L.C. ("Boh Bros."), challenges the district court's summary judgment in favor of Defendant-Appellee Turn Services, L.L.C. ("Turn").

For nearly a century, *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927), has limited plaintiffs' ability to recover "purely economic claims

. . . in a maritime negligence suit."[1] "[A]bsent physical injury to a proprietary interest"—or one of a few other limited exceptions—plaintiffs asserting such claims are out of luck.[2] As Chief Justice Holmes noted there, "a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong."[3]

We have faithfully applied this "pragmatic limitation on the doctrine of foreseeability."[4] We have explained in doing so that its purpose is "to limit the consequences of negligence and exclude indirect economic repercussions, which can be widespread and open-ended."[5] Put another way, the "spectre of runaway recovery lies at the heart of the *Robins Dry Dock* rubric."[6]

No such spectre lurks among us today. For that reason—and notwithstanding the district court's thoughtful disposition of the matter— we vacate and remand for further treatment consistent with this opinion.

## I. OPERATIVE FACTS

Plains Marketing LP ("Plains") hired Boh Bros. to construct a dock in the Mississippi River. The project required Boh Bros. to install mooring dolphins in the river. It is undisputed that Plains owned the dolphins.

---

[1] *In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 377 (5th Cir. 2006).

[2] *Id.*

[3] *Robins Dry Dock*, 275 U.S. at 309 (citing *Nat'l Sav. Bank v. Ward*, 100 U.S. 195 (1879)).

[4] *Plains Pipeline, L.P. v. Great Lakes Dredge & Dock Co.*, 620 F. App'x 281, 285 (5th Cir. 2015) (per curiam) (quoting *Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1032 (5th Cir. 1985) (en banc)).

[5] *Catalyst Old River Hydroelectric Ltd. P'ship v. Ingram Barge Co.*, 639 F.3d 207, 210 (5th Cir. 2011) (citing *TESTBANK*, 752 F.2d at 1022).

[6] *Amoco Transp. Co. v. S/S Mason Lykes*, 768 F.2d 659, 668 (5th Cir. 1985).

No. 21-30520

On the night of February 12, 2019—while the construction project was ongoing—the M/V AFFIRMED, a vessel owned by Turn, allided with MD-9, one of the mooring dolphins. Fortunately, Boh Bros. had procured a builder's risk insurance policy from XL covering the project. The policy covered Boh Bros. as the named insured and Plains as an additional insured party.

Boh Bros. repaired the dolphin at a cost of $1.254 million and submitted a claim to XL. XL paid Boh Bros. that amount less the deductible. XL also paid Boh Bros. $485,000, which Boh Bros. remitted to Plains after subtracting Plains's share of the deductible.[7]

XL, acting as Boh Bros.'s subrogee, sued Turn in an effort to recover the more than $1.7 million that XL had paid out. The district court, however, granted Turn's summary judgment motion, concluding that *Robins Dry Dock* precluded XL from recovering from Turn. XL timely appealed.

## II. Standard of Review

We review a summary judgment de novo.[8] Summary judgment is proper only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9]

## III. Analysis

### A. Repair Costs

As noted, the district court rendered summary judgment for Turn in the belief that *Robins Dry Dock* compelled that outcome. The court concluded

---

[7] The record does not establish what this $485,000 payout covered, although common sense and record evidence suggest it was for a loss incurred by Plains, the recipient. XL "concedes that [it] . . . was not for direct physical damage to the dock project/MD-9."

[8] *Taira Lynn*, 444 F.3d at 376 (citing *Am. Home Assurance Co. v. United Space All., LLC*, 378 F.3d 482, 486 (5th Cir. 2004)).

[9] Fed. R. Civ. Proc. 56(a).

that a decision to the contrary would "undoubtedly contradict the doctrine's [policy against] limitless liability." We disagree. A claim for the costs of repairing damage caused by an allision presents no such risk. *Robins Dry Dock* therefore does not bar XL's claim as it relates to the $1.254 million in repair costs.

"It is unmistakable that the law of this circuit does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit."[10] As noted above—and by the district court— this rule exists to avoid the possibility of limitless liability.[11]

We have emphatically rejected calls to abandon the physical injury requirement.[12] In doing so, though, we have explained that the requirement—like the common law principle from which it emerged— applies to claims for "pure economic losses."[13] We have also made clear that "*Robins Dry Dock* is inapposite" when "the risk of double recovery from the tortfeasor is not extant."[14] In *Amoco Transport Co. v. S/S Mason Lykes*— which we decided mere months after *TESTBANK*—we concluded that the owners of cargo aboard a ship involved in a collision could recover their economic losses, despite the cargo's being undamaged.[15] We reached this conclusion because, given a risk-shifting provision in the cargo owners'

---

[10] *Taira Lynn*, 444 F.3d at 376.

[11] *See, e.g.*, *Catalyst*, 639 F.3d at 210.

[12] *TESTBANK*, 752 F.2d at 1032.

[13] *Id.* at 1027.

[14] *Amoco*, 768 F.2d at 668 (citing *Venore Transp. Co. v. M/V STRUMA*, 583 F.2d 708 (4th Cir. 1978)).

[15] *Id.* at 660–62.

agreement with the ship owner, there was no risk of "double recovery, much less runaway recovery."[16]

If *Robins Dry Dock* was inapposite to that situation, it must also be inapposite to the instant case. Unlike the cargo owners in *Amoco*, Boh Bros. (XL's subroger) did not suffer a "pure economic loss." Rather, the $1.2 million claim was paid for the cost of repairing physical damage to the dolphin. The fact that Plains owned the dolphin is irrelevant: The $1.2 million went towards repairing physical damage, and that is dispositive. As in *Amoco*, there is no risk of "runaway recovery."[17]

On appeal, Turn devotes significant ink to its contention that Boh Bros.'s responsibility for repairing the dolphin does not equate to a proprietary interest in it. Turn similarly contends that the risk of loss for the dolphin was not shifted from Plains to Boh Bros. by virtue of their contract. (If it were, an exception to *Robins Dry Dock* would apply.)[18] We are particularly skeptical of the second claim: If Boh Bros. bore no risk for the project, why would it pay for the repairs? Surely that is enough to warrant applying the risk-shifting exception to *Robins Dry Dock*. We need not answer this question definitively, though, because we hold that *Robins Dry Dock* is not implicated by the $1.2 million that XL paid Boh Bros. to cover the repairs.

## B. Economic Damages

The remaining $485,000 of XL's claim presents a slightly different issue. As noted, the record is less than clear regarding the nature of the damages covered by this payment from XL. It concedes, however, that the

---

[16] *Id.* at 668.

[17] *Id.*

[18] *See id.*

money it paid "was not for direct physical damage to the dock project/MD-9." We may assume for purposes of this appeal, then, that the subject payment covered some sort of economic damages. Record evidence indicates, however, that Boh Bros. passed the $485,000 along to Plains, subtracting only an agreed-upon portion of the deductible. It is also undisputed that Plains owned the damaged dolphin at the time of the allision. And, as noted, the dolphin suffered extensive damage.

We perceive no reason, then, that *Robins Dry Dock* bars recovery in this situation. It is clear, after all, that the doctrine would be inapplicable here if XL had paid the money directly to Plains, because Plains had a proprietary interest in the damaged dolphin. That the money passes through the hands of an intermediary—here, Boh Bros.—is irrelevant to the concerns animating *Robins Dry Dock*.[19] Regardless, the district court is well-positioned to make any additional findings of fact that may prove necessary regarding such claim.

## IV. Conclusion

We conclude that the rule of *Robins Dry Dock* does not bar recovery by XL. We therefore VACATE the district court's judgment and REMAND for further proceedings consistent with this opinion.

---

[19] *See, e.g.*, *id.* at 668–69.