E. GRADY JOLLY, Circuit Judge:
In early November of 1989, the offshore towboat GULF STAR, operated by Zapata Gulf Marine Operators and crewed by Zapata Gulf Marine Services Corp., was tied to a docking platform in the Gulf of Mexico, waiting for a storm from the north to pass. As the GULF STAR prepared to maneuver, its mooring lines parted, and it and the construction barge to which it was connected began drifting south with the wind and waves toward a gas and condensate producing platform, owned by Corpus Christi[1]. The tug and barge bore down on the platform, while the GULF STAR’S captain tried in vain to halt the barge’s drift with the tug’s ailing engines, or to reel in the barge with the tug’s winch. Although the captain slowed the barge, in the end he could not avert an ailision between the barge and the Corpus Christi platform. The ailision damaged a gas riser connected to the platform, owned by Houston Pipeline Company (“Houston”). Corpus Christi sued the Zapata defendants (“Zapata”), and the district court found Zapata liable to Corpus Christi and Houston for damages they incurred as a result of Zapata’s negligence. We affirm in part and reverse in part the award of damages to Corpus Christi, affirm the award of damages to HPLC, and affirm the award of prejudgment interest to Corpus Christi and Houston, and the taxation of costs to Zapata.
*200 I
The Corpus Christi platform is located in the Gulf of Mexico, about eight miles from Port O’Connor, Texas. Attached to a leg of the platform is a riser, a vertical pipe through which flows gas and gas condensate. The riser is owned by Houston. The riser connects to a pipeline, also owned by Houston, that runs eight miles from the platform to the beach. Although other risers attached to the platform were fitted with riser guards to prevent damage from allisions, the riser damaged in the allision lacked any sort of protection.
Workers on the Corpus Christi platform foresaw the allision and promptly shutdown operations to prevent a fire or explosion. The force of the allision crushed the concrete riser coating and damaged the riser. Houston ordered Corpus Christi to shut in its wells so that it could inspect the riser and replace the damaged section. The repair took two weeks, during which time Corpus Christi could not use the riser to convey its gas. During the repairs, Corpus Christi flared gas to prevent the loss of the wells.
The district court conducted a bench trial. At its close, the district court allocated fault for damage to the riser two-thirds to Zapata, and the remaining one-third, collectively, to Corpus Christi and Houston.[2] Zapata argued at trial — and now argues on appeal— that Corpus Christi did not sustain physical damage to any proprietary interest; thus, under the “bright line” rule of this circuit announced in Louisiana ex rel. Guste v. M/V TESTBANK, 752 F.2d 1019 (5th Cir.1985) (en banc), cert. denied, 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986), may not recover its losses incurred due to Zapata’s negligence. In support of its argument, Zapata notes that Corpus Christi did not own the damaged riser, and that it voluntarily flared the gas, the cost of which it now seeks to recover. Zapata does not disputé, however, that Corpus Christi would have incurred great harm to its wells if it had not flared the gas during Houston’s repair of its riser.
The district court held that the flaring of the gas constituted physical damage to a proprietary interest of Corpus Christi, thus permitting Corpus Christi to avoid the TESTBANK bar. The court reasoned as follows:
8. [T]he gas flared by [Corpus Christi] when [Houston] shut in the platform constitutes the physical damage necessary for [Corpus Christi] to trump TESTBANK’s restrictive approach to recovery in maritime tort. Because plaintiffs had to shut in their wells and flare gas to keep from losing those wells while [Houston] repaired its riser, the proprietary interest of plaintiffs in their wells and gas is sufficient to enable them to recover for their loss.
9. While the gas was flared voluntarily by plaintiffs after the allision with [Houston’s] riser, it was flared in order to prevent the wells themselves from being lost. Had plaintiffs done nothing, their wells would have sustained perhaps permanent physical damage as a direct result of the allision — such physical damages clearly would have enabled plaintiffs to recover from the Zapata defendants. However, had plaintiffs not flared gas and had they instead allowed their wells to be iost, their damages would have been reduced by the amount of damages which could have been mitigated by flaring. Thus, the “voluntary” flaring does not bar recovery, as defendants urge, but rather demonstrates that plaintiffs mitigated their damages. * * *
10. * * * In the ease at bar, ... the plaintiffs suffered physical harm: plaintiffs were forced to burn, or flare, gas in order to avert structural damage to their wells.
Second Amended Findings of Fact and Conclusions of Law at 4-5.
The district court thus awarded to Corpus Christi the value of the gas and condensate that was flared. In addition, the district court awarded Corpus Christi the revenue lost while its wells were shut in for the repair of the riser. The proportionate share of *201 these items amounted to $232,628.64. With respect to Houston, the district court awarded its actual costs of repair and the value of gas that was lost. The proportionate share of these items amounted to $203,999.97. Finally, the district court determined that Corpus Christi and Houston both were entitled to prejudgment interest, and it taxed litigation costs against Zapata.
II
A
In Pennzoil Producing Co. v. Offshore Express, Inc., 943 F.2d 1465, 1473 (5th Cir.1991), we reviewed a district court’s application of the rule of law announced in Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 309, 48 S.Ct. 134, 135, 72 L.Ed. 290 (1927), and reaffirmed by this court in TEST-BANK Noting the applicable standard of review, we wrote:
It is well settled law that, as in most federal actions, in maritime actions the “clearly erroneous” rule applies to the review of the factual findings of the trial court. Thus we must accept the district court’s findings of fact unless, upon reading the record and examining the exhibits, we are convinced that they are demonstrably incorrect. Fed.R.Civ.P. 52(a); Candies Towing Co., Inc. v. M/V B & C ESERMAN, 673 F.2d 91, 93 (5th Cir.1982).
Pennzoil, 943 F.2d at 1469.
B
The damages award in this case had three components — the cost of gas flared by Corpus Christi to preserve the wells, the revenue lost by Corpus Christi during the period of the riser’s repair, and the cost incurred by Houston of repairing the damage to the riser. We address each award in turn.
(1)
Zapata argues that Corpus Christi suffered no physical damage from the allision, and is therefore entitled to no damages award. In the alternative, it argues that, if the flaring of the gas (in order to save the wells) suffices as physical damage, then Corpus Christi is entitled only to the costs incurred by the voluntary flaring of gas, and not the purely economic loss in gas production for the two weeks while Houston repaired its riser.
In this circuit, an admiralty plaintiff cannot recover negligently inflicted economic losses where there is no physical damage to the plaintiffs property. TESTBANK, 752 F.2d at 1020. In TESTBANK, we reviewed a summary judgment entered against numerous plaintiffs, each claiming purely economic losses arising from a spill of a toxic chemical in the Mississippi River Gulf outlet. Later, in Consolidated Aluminum Corp. v. C.F. Bean Corp., 772 F.2d 1217 (5th Cir.1985), cert. denied, 486 U.S. 1055, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988) a panel of this court reviewed TESTBANK, noting:
The “character of the interest harmed” for which the plaintiffs sought relief in TEST-BANK was solely economic. Given this character of the interest harmed, the Court reaffirmed the holding of this Court that physical damage to a proprietary interest [is] a prerequisite to recovery for economic loss in cases of unintentional tort. The Court emphasized that to abandon the physical injury requirement would impose a “limitless type of liability,” and the result would be wave upon wave of successive consequences. The Court also noted the corresponding difficulty to courts in managing such economic claims on a discrete basis under traditional tort principles. Thus, where the character of the interest harmed was solely economic, the Court held that no recovery could be allowed under Robins as a “pragmatic limitation upon the tort doctrine of foreseeability.”
Consolidated, 772 F.2d at 1222 (internal citations and some quotation marks omitted).
Corpus Christi points out that in Consolidated, we held that physical damage that was a consequence of an accident was sufficient to satisfy TESTBANK’s requirement. In that case, Consolidated Aluminum Corporation’s plant machinery was damaged by the slowing of the flow of gas that was caused by Bean’s negligent puncture to a pipeline some six miles from Consolidated’s facility. We held that Consolidated had stated a claim for *202 physical damages to its machinery as a result of Bean’s negligence and that, therefore, TESTBANK did not preclude Consolidated’s recovery of associated economic losses. Consolidated, 772 F.2d at 1222.
Corpus Christi also points to Pennzoil, a case factually similar to the one at bar. There we held that damage to a well resulting from the failure to flare gas after a well was shut in following an allision constituted the kind of physical damage that made the TESTBANK bar inapplicable. See Pennzoil, 943 F.2d at 1473. Corpus Christi argues that here, it did “what this Circuit told Pennzoil it should have done” — flared the gas and prevented the loss of its wells.
We think that it does no violence to TEST-BANK or its underlying principles to find recovery appropriate in the case before us. Except for its acts in mitigation, Corpus Christi would have suffered great physical damages to its wells as a result of Zapata’s negligence. TESTBANK must not be construed as mandating the narrow and impractical result urged by Zapata: finding a defendant free of liability when the plaintiff incurs losses, although “voluntarily” so, that nevertheless are directly attributable to its efforts to avoid the physical damages that would have rendered that defendant liable for much larger sums. We therefore agree with the district court that Corpus Christi’s costs incurred in flaring the gas to save its wells constitutes the physical damage to a proprietary interest, i.e., its gas, sufficient to satisfy the TESTBANK requirements. Corpus Christi is thus entitled to $58,613, representing the economic loss it suffered because of the flaring of the gas, to be reduced by one-third (reflecting the amount of Corpus Christi’s own negligence), for a total award of $39,075.33.
(2)
We disagree, however, that Corpus Christi is further entitled to damages resulting from its inability to produce and sell its gas in the two weeks during which Houston repaired its riser. TESTBANK denies recovery for pure economic losses not associated with physical injuries. Although we hold that the recovery Corpus Christi seeks for its flared gas is based upon injury to its property — that is, its gas — no such argument can be made with respect to the purely economic losses resulting from failure to sell its gas during the two-week repair. That gas remains in the ground, unaffected by the property damage suffered by Corpus Christi, that is, the gas that was flared. The additional economic losses that Corpus Christi seeks to recover occurred solely and only because of the physical damage that was done to Houston’s property, i.e., the riser, which shut down Houston’s pipeline. Corpus Christi lost its gas sale profits because it could not use the pipeline, not because it was flaring its own gas.
We recognize that, although TEST-BANK suggests an association between recovery sought and damage to the plaintiffs property, it left undecided the degree of association required. Neither did Consolidated clearly resolve this question. It simply made clear that economic losses that flowed directly from the physical damage to Consolidated’s property were recoverable. In the present case, however, we are squarely presented with the question of whether the principle of TESTBANK — that is, a limitation on the doctrine of foreseeability[3] — requires that recoverable economic damages have some direct tie to the plaintiffs specific physical loss or damage, or whether the TESTBANK principle simply requires a showing of damage to some proprietary interest of the plaintiff, in order to open the door to recovery for all purely economic damages that were foreseeable from the initial tort. For help in answering this question, we turn first to the principles underlying TESTBANK
In TESTBANK, when considering the basis of the subject rule, we explained as follows:
Robins broke no new ground but instead applied a principle ... which refused recovery for negligent interference with *203 “contractual rights.” Stated more broadly, the prevailing rule denied a plaintiff recovery for economic loss if that loss resulted from physical damage to property in which he had no proprietary interest.
TESTBANK, 752 F.2d at 1022 (emphasis added). We concluded that “Robins Dry Dock is both a widely used and necessary limitation on recovery for economic losses.” Id. at 1027. Thus, TESTBANK strongly suggests that recoverable losses somehow be tied to the damage to the plaintiffs property, here the flared gas. Clearly, TESTBANK sought to preclude wave upon wave of damages. For example, assuming Corpus Christi were a vertically integrated operation, TESTBANKs bright line rule serves to pre-elude not only recovery for lost gas sales from the well, but also any damages related to refineries that could not process the gas, or damages related to trucking operations that could not transport the gas or to retail outlets that could not sell the final product.
Although one might try to extrapolate an argument from Consolidated that, once physical damage to any proprietary interest is proven, all pure economic losses are recoverable, such a reading, we think, is inconsistent with Consolidated’s holding. In Consolidated, all the awarded damages flowed directly from the destruction of Consolidated’s production facilities. Consolidated sued
not solely for any lost income or other economic loss from the interruption of its supply of natural gas (e.g., due to being forced to pay higher prices for an alternative supply) but instead for physical losses, as well as attendant economic damages, to its own property which occurred as a result of the interruption of Consolidated’s supply of gas “within minutes” of the pipeline’s rupture.
Consolidated Aluminum, 772 F.2d at 1221-22 (third emphasis added).
As we have emphasized, Corpus Christi’s claimed economic loss was not “attendant” to the physical damage to Corpus Christi’s proprietary interest; the loss was instead occasioned only by the physical injury to Houston’s riser, property in which Corpus Christi had no proprietary interest. To allow recovery for those losses plainly would abrogate the bright line rule of TESTBANK. To insure that the principles underlying TEST-BANK are preserved, we hold that simply meeting the requirement of showing physical damage to a proprietary interest does not automatically open the door to all foreseeable economic consequences. We therefore reverse the district court on this point, and deny Corpus Christi’s recovery of revenue lost while its wells were shut in for the repair of Houston’s riser.
(3)
As to Houston’s recovery, Zapata takes the position that the district court erred in finding Houston’s damages to be $306,000, because it “arbitrarily rejected the uncontradicted and unchallenged testimony and evidence presented by Zapata’s expert, Richard Zimmerman,” who testified that Houston’s damages were approximately $45,-000 to $50,000. Although Zapata acknowledges that we must review the district court’s finding of damages only for clear error, it cites Strachan Shipping Co. v. Dresser Indus., Inc., 701 F.2d 483, 487 (5th Cir.1983) for its contention that, in cases where “no credibility choice has been made by the district court, ‘the burden of proving the district court’s findings clearly erroneous is to some extent ameliorated.’ ” It argues that this is just such a case, and that the district court violated precedent of this Circuit by “arbitrarily reject[ing] the testimony of a witness whose testimony appears credible.” Gee Chee On v. Brownell, 253 F.2d 814, 817 (5th Cir.1958). Zapata admits that Houston is entitled to an award for damage to its riser, but argues that the award should be no more than the cost to which Zimmerman testified at trial — the $45,000 to $50,000 cost of a metal sleeve fitted around the damaged section of the riser. In a similar vein, Zapata also argues that neither Corpus Christi nor Houston offered any testimony or evidence to contradict Zimmerman’s testimony that, had a riser guard been placed around the pipe, there would have been no damage to the riser. Zapata concludes that it should not have been liable to either party, except for the cost of replacing the riser guard.
*204 Citing Freeport Sulphur Co. v. S/S HERMOSA, 526 F.2d 300, 304 (5th Cir.1976), Houston responds that actual cost of repairs is the proper measure of damages. Houston contends that the court was not bound to accept uncontroverted expert opinion testimony, and that its refusal to do so was a permissible exercise of the district court’s discretion that should not be second-guessed on appeal. Houston further points out that, although Zimmerman testified that the platform was not damaged in the allision, the district court found specifically that the platform’s boat platform was in fact damaged. Houston further notes the district court’s finding that the possibility remained that, even with a guard, the riser might have sustained some damage. In the light of that fact, it argues, the district court declined to speculate on the effect that less severe damage to the riser would have had on Houston’s damages.[4]
We are not persuaded that the district court’s damages findings are clearly erroneous. The district court simply chose not to believe all of Zimmerman’s testimony. Indeed, the Supreme Court has observed that it is not error for the factfinder to reject expert opinion evidence, even if uncontro-verted. Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627-28, 64 S.Ct. 724, 729, 88 L.Ed. 967, 973 (1944). Here, the factfin-der acted within his discretion. To be sure, it is clear from the district court’s finding of comparative fault on the part of Houston that it considered — and accepted part of — the testimony of Zapata’s expert; it simply chose, within its discretion, not to adopt fully that expert’s view as the view of the court with respect to the recoverable damages.
C
Zapata also challenges the district court’s award of prejudgment interest to Houston and Corpus Christi. The district court found that the facts of this case were not sufficiently “peculiar” to mandate denial of what is the norm in admiralty cases— award of prejudgment interest to the prevailing party. Zapata urges us to review de novo whether peculiar circumstances existed in this case so as to abrogate the normal rule. Corpus Christi and Houston argue that the award of prejudgment interest is a matter committed to the district court’s discretion, and that no abuse of that discretion occurred in this ease.
As the district court correctly noted, in maritime cases the award of prejudgment interest is the rule, rather than the exception, and the trial court has discretion to deny prejudgment interest only where peculiar circumstances would make such an award inequitable. See Reeled Tubing, Inc. v. M/V CHAD G, 794 F.2d 1026, 1028 (5th Cir.1986) (holding that award of prejudgment interest is, in practice, “well-nigh automatic.”). We have further explained as follows:
Whether such circumstances exist is a question of fact, and the standard to be applied on review is the “clearly erroneous” standard. But even if an appellant can demonstrate that it would be clearly erroneous to say that there are no peculiar circumstances, the appellant must further show that when the trial court declined the request to deny prejudgment interest, the trial court abused the discretion that was created by the peculiar circumstances.
Noritake Co., Inc. v. M/V HELLENIC CHAMPION, 627 F.2d 724, 729 (5th Cir.1980). Thus, we conclude that the factual findings leading to the district court’s decision concerning whether “peculiar circumstances” exist so as to allow the court properly to consider prejudgment interest should be reviewed for clear error. If peculiar circumstances are found to exist, the decision whether prejudgment interest should be awarded, should be reviewed for abuse of discretion.
With this standard in mind, we think that the district court did not clearly err in concluding that this case did not present “peculiar circumstances” sufficient to justify denial of the award of prejudgment interest to Cor *205 pus Christi and Houston. The district court found no delay on the part of either of the prevailing parties; it found no more evidence of a “good faith” dispute than in any other admiralty ease; and it found that apportionment of liability in an offshore allision case was not a “peculiarity” that would justify denial of the award of prejudgment interest to Corpus Christi and Houston. We find no clear error in these conclusions.[5]
CONCLUSION
We AFFIRM the award of damages to Houston, and AFFIRM the award of damages to Corpus Christi in the amount attributable to the flaring of gas to save its wells, of $58,613. We further AFFIRM the award of prejudgment interest to Houston and Corpus Christi, and the taxation of costs to Zapata. We REVERSE that portion of the district court’s decision granting to Corpus Christi damages for its economic losses suffered during the period in which Houston repaired its riser.
AFFIRMED in part and REVERSED in part.

. "Corpus Christi" refers collectively to the plaintiffs associated with the platform, including Corpus Christi Hydrocarbons Co. and PG & E Resources Offshore Co., which was formerly known as Corpus Christi Oil & Gas Co.

. The district court found Houston negligent for failing to protect the riser from accidental vessel damage, and Corpus Christi negligent either for failing to review plans for the riser before allowing Houston to attach the riser, or failing to require Houston adequately to protect its riser before allowing Houston to attach the riser.

. In TESTBANK we wrote, "Denying recovery for pure economic losses is a pragmatic limitation on the doctrine of foreseeability, a limitation we find to be both workable and useful." TESTBANK, 752 F.2d at 1032.

. Corpus Christi also points out other weaknesses in Zimmerman's testimony, including his admission that his opinion depended upon an assumption that the barge would have struck the riser guard in a certain way, and that his diagram reflected that he was unsure what part of the barge had struck the riser.

. Zapata also complains that costs of the action should not have been taxed against it, for essentially the same reasons it urges in its prejudgment interest argument. Federal Rule of Civil Procedure 54(d)(1) states that, with exceptions not relevant here, "costs other than attorneys’ fees shall be allowed as of course to the prevailing party unless the court otherwise directs.” A party that obtains a favorable judgment on at least a fraction of its claims may be regarded as a prevailing party, even though that party has not sustained all its claims. United States v. Mitchell, 580 F.2d 789, 793 (5th Cir.1978). The district court, finding Zapata two-thirds at fault — a finding we do not disturb on appeal — acted well within its discretion when it awarded Corpus Christi and Houston their costs of court.