United States Court of Appeals
Fifth Circuit

**F I L E D**

July 2, 2007

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-31133

_____

SCAPA FORMING FABRICS; WURTTEMBERGISCHE UND BADISCHE
VERSICHERUNGS-AKTIENGESELLSCHAFT

             Plaintiffs - Appellees

    v.

BLUE ANCHOR LINE

             Defendant - Third Party Plaintiff - Appellant

    v.

MEDITERRANEAN SHIPPING CO, S.A.

             Third Party Defendant - Appellee

_____

Appeal from the United States District Court
for the Eastern District of Louisiana, New Orleans
No. 2:02-CV-2213

_____

Before DAVIS, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

    This appeal concerns who bears responsibility for damage

that resulted to components of a weaving loom machine while it

was being shipped from Germany to the United States.  Jurgens

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

-1-

Maschinenbau GmbH & Co. ("Jurgens"), the seller of the weaving loom machine, hired a freight forwarder, Kuehne & Nagle, to arrange for transportation of the machinery from its facility in Emsdetten, Germany, to its customer, Scapa Forming Fabrics ("Scapa"), in Shreveport, Louisiana. Kuehne & Nagel booked the cargo for carriage through Defendant-Third Party Plaintiff-Appellant Blue Anchor Line ("Blue Anchor"), a non-vessel operating common carrier. Blue Anchor in turn contracted with Third Party Defendant-Appellee Mediterranean Shipping Company ("MSC") to carry the machinery aboard one of MSC's motor vessels, the MSC Giovanna, from Germany to the United States. The terms and conditions of the shipment were encompassed in two bills of lading, one belonging to Blue Anchor and one belonging to MSC.

In order to ship the weaving loom machine, the components of the machine were placed in five open-top containers. Each container was assigned a stowage location on the MSC Giovanna. One of these containers, open-top container No. CCSU-340101-0, was stowed on deck. During the voyage, the vessel encountered rough weather and the machinery parts in this particular container were damaged as a result of contact with saltwater.

Plaintiffs-Appellees Scapa and Wurttembergische und Badische Versicherungs-Aktiengesellschaft, Jurgens's cargo insurer, (collectively, "Plaintiffs") filed this lawsuit against Blue Anchor for damages to the machinery under the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. §§ 1300-1315, and the applicable

-2-

bills of lading. Blue Anchor filed a third-party complaint against MSC for indemnification.

Following a bench trial on liability, the district court rendered judgment in favor of Plaintiffs and MSC. The district court determined that Blue Anchor's bill of lading was a clean bill of lading for open-top containers because it was silent as to the stowage location for open-top containers. According to the district court, a clean bill of lading implies below-deck stowage and constitutes an agreement between the shipper and the carrier that the cargo will be stowed below deck. Because Blue Anchor permitted container No. CCSU-340101-0 to be stowed on deck when its bill of lading required below-deck stowage, the district court concluded that Blue Anchor unreasonably deviated from its contract of carriage.

The district court then examined whether Blue Anchor was entitled to limit its liability to $500 per package under COGSA, 46 U.S.C. § 1304, or $7000 for the fourteen packages in container No. CCSU-340101-0. Although a carrier generally forfeits the $500 per package limit defense under COGSA when it stows cargo on deck under a clean bill of lading, the district court noted two exceptions to this general rule: (1) when the custom of the port permits on-deck stowage; or (2) when the vessel contains design or construction features that eliminate or substantially reduce the risk of on-deck stowage. Finding neither exception applicable, the district court concluded that Blue Anchor

forfeited the $500 per package limit defense under COGSA.

Finally, the district court determined that MSC was not required to indemnify Blue Anchor for the damage caused to the machinery components in container No. CCSU-340101-0 over and above the $500 per package liability limitation to which MSC was entitled under COGSA. The district court reasoned that Blue Anchor knew Jurgens's cargo was water-sensitive but failed to impart that critical information to MSC. In addition, the district court found that MSC's bill of lading expressly conferred upon MSC the right to stow any type of container, including open-top containers, on deck without notice to the shipper.

In a subsequent order, the district court considered whether Plaintiffs were entitled to prejudgment interest and whether Blue Anchor was entitled to a credit for the settlement money received by Plaintiffs from MSC in a separate action. Finding no evidence of peculiar circumstances, the district court awarded prejudgment interest to Plaintiffs. Regarding the settlement between Plaintiffs and MSC, the district court concluded that Blue Anchor was not entitled to a setoff but rather a credit of $7000, which represented the $500 per package liability limitation to which MSC was entitled under COGSA. The district court entered a final judgment against Blue Anchor on July 29, 2005.

Blue Anchor timely appealed the district court's judgment, challenging the district court's conclusion that it deviated from

-4-

its bill of lading by stowing the weaving machinery on deck. Blue Anchor argues that even if its bill of lading required below-deck stowage, its contractual deviation was still reasonable, entitling it to limit its liability to $500 per package under COGSA, 46 U.S.C. § 1304. Blue Anchor also contends that the district court erred in concluding that it was not entitled to full indemnification from MSC because, according to Blue Anchor, MSC was negligent in stowing the container on deck. Finally, Blue Anchor challenges the district court's award of prejudgment interest and the district court's refusal to offset the damages by the amount of the settlement between Plaintiffs and MSC.

We have jurisdiction over this matter pursuant to 28 U.S.C. § 1291. "In admiralty cases tried by the district court without a jury, we review the district court's legal conclusions *de novo* and its factual findings under the clearly erroneous standard." Steel Coils, Inc. v. M/V Lake Marion, 331 F.3d 422, 426 (5th Cir. 2003). "If the district court's findings are plausible, we may not reverse even if we would have weighed the evidence differently." Rockwell Int'l Corp. v. M/V Incotrans Spirit, 998 F.2d 316, 319-20 (5th Cir. 1993).

Having reviewed the briefs, the district court's oral reasons for judgment, and the pertinent portions of the record, we find no error of law or fact warranting reversal. Essentially

-5-

for the reasons stated by the district court, we agree that Blue Anchor failed to properly stow the container below deck in accordance with its bill of lading, which was clean as to open-top containers. See Searoad Shipping Co. v. E.I. duPont de Nemours & Co., 361 F.2d 833, 835 (5th Cir. 1966) (stating that even if the parties have no express agreement regarding below-deck carriage, "a clean bill of lading imports under deck stowage") (internal quotation marks and citation omitted). In so doing, Blue Anchor committed an unreasonable deviation, thereby eliminating the $500 per package limit defense under COGSA. See 46 U.S.C. § 1304(4)-(5); Constructores Tecnicos S. de R.L. v. Sea-Land Serv., Inc., 945 F.2d 841, 845 (5th Cir. 1991). Because Blue Anchor committed an unreasonable deviation from its contract of carriage, we affirm the district court's judgment in favor of Plaintiffs.

We also affirm the district court's judgment in favor of MSC on Blue Anchor's indemnification claim for the same reasons given by the district court in its oral reasons for judgment. Pursuant to its bill of lading, MSC had the right to stow "containers of all types" on deck without notice to Blue Anchor. Accordingly, the district court did not err in ruling in favor of MSC on this issue.[1]

---

[1]  To the extent Blue Anchor is basing its theory of indemnification on the implied warranty of workmanlike performance, this court has already rejected this theory in cargo

-6-

Lastly, we affirm the district court's order on damages. Based on the record before us, we cannot conclude that Blue Anchor is entitled to a credit for the settlement between Plaintiffs and MSC. There is no evidence in the record that Plaintiffs will be overcompensated in this case. We also find no abuse of discretion in the district court's award of prejudgment interest. Blue Anchor has not pointed to any evidence in the record showing that peculiar circumstances exist. See <u>Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp.</u>, 71 F.3d 198, 204-05 (5th Cir. 1995).

Accordingly, for the reasons stated above, we AFFIRM the judgment of the district court.

AFFIRMED.

---

damage cases. See <u>LCI Shipholdings, Inc. v. Muller Weingarten AG</u>, 153 F. App'x 929, 932 (5th Cir. 2005) (unpublished).