# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 15, 2011

No. 10-30466

Lyle W. Cayce
Clerk

CATALYST OLD RIVER HYDROELECTRIC
LIMITED PARTNERSHIP,

Plaintiff-Appellant

v.

INGRAM BARGE CO.; JOHN DOE; A B C INSURANCE CO.;
JAMES ROE; X Y Z INSURANCE CO.; AMERICAN RIVER
TRANSPORTATION CO.,

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Louisiana

Before DAVIS, WIENER, and BENAVIDES, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Catalyst Old River Hydroelectric Limited Partnership ("Catalyst") appeals the judgment of the district court dismissing on summary judgment its claims for damage arising out of a maritime tort. Specifically, Catalyst argues that the district court erred by finding that the entry of the barge of defendant American River Transportation Co. ("ARTCO") into the intake channel of Catalyst's hydroelectric facility did not satisfy the damage requirement of *Louisiana ex. rel. Guste v. M/V TESTBANK*, 752 F.2d 1019 (5th Cir. 1985) (en banc), *cert. denied*,

No. 10-30466

477 U.S. 903 (1986), so as to allow Catalyst to recover its economic losses. We agree with Catalyst and reverse.

I.

Catalyst owns and operates a hydroelectric station on a privately owned channel from the Mississippi River, just upriver from the Mississippi River Flood Control Structures at Old River in Concordia Parish, Louisiana. The station is comprised of the intake channel which diverts water from the Mississippi River, a dam structure which contains the turbines, generators and other machinery of the station, and the outflow channel which directs water from the dam to the Old River/ Red River/ Atchafalaya River. As indicated, the station is not on the Mississippi but rather in a channel off the river. Catalyst owns the station and the surrounding property necessary for its operation. This includes the banks of the Mississippi River, the intake channel, and the abutment on which the dam structure sits. The intake channel and a small island located in the mouth of the intake channel where it meets the Mississippi River are functional elements of the hydroelectric facility, acting as a pipe would to direct water into the station's eight turbines in order to produce electricity.

ARTCO and Ingram Barge Co. ("Ingram") operate tug boats with barge tows on the Mississippi River. On December 24, 2007, shortly before 9:00 p.m., two tows operated respectively by ARTCO and Ingram (collectively, the "Defendants") collided on the Mississippi River approximately 2.5 miles upriver from Catalyst's intake channel. ARTCO was operating the M/V DAN MACMILLAN and its tow, and Ingram was operating the M/V JOHN M DONNELLY and its tow. As a result of the collision, several barges broke free from the tow of the M/V DAN MACMILLAN, including Barge TILC-37. Barge TILC-37 then drifted downriver into the intake channel of Catalyst's facility and became grounded on the east bank of the intake channel, lodged against the station and abutment. The physical presence of Barge TILC-37 obstructed the

2

No. 10-30466

intake channel, which provides water to the turbine / generators of the electric power generation facility.

The presence of the barge forced Catalyst to reduce the flow of water in the intake channel into the turbines, and thus its output of electricity to prevent the barge from sinking and to allow safe access to the barge for its removal. Around 10:30 p.m., Catalyst shut down six turbines and reduced the remaining two to minimum power because of the decreased flow of water directed to the turbines from the intake channel. A barge crane and a vessel were thereafter able to enter the intake channel, offload the barge's cargo, and tow the damaged barge away from the station where a larger barge crane could unload the barge's cargo, so it could safely re-enter the Mississippi River. Catalyst restarted the dormant turbines and restored the two running turbines to normal capacity around 6:30 p.m. on December 25, 2007.

Catalyst filed suit in Louisiana state court seeking damages for the value of the electrical power it was unable to generate due to the intrusion of the barge. The Defendants removed the suit to federal district court. Following limited discovery, the Defendants jointly filed a motion for summary judgment seeking dismissal of all claims. The district court granted the motion and Catalyst timely appealed.

## II.

The district court's decision on a motion for summary judgment is reviewed *de novo*. *Maher v. Strachan Shipping Co.*, 68 F.3d 951, 954 (5th Cir. 1995). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Maher*, 68 F.3d at 954.

## III.

It is well settled under the general maritime law that there can be no recovery for economic loss absent physical damage to or an invasion of a

proprietary interest. *Robins Dry Dock & Repair Co.  v. Flint*, 275 U.S. 303 (1927); *TESTBANK*, 752 F.2d 1019.  The question in this case is whether Catalyst suffered such damage to its propriety interest in its hydroelectric station as to satisfy this test and justify the recovery of the economic damages Catalyst seeks in this suit.  In order to analyze how the *Robins* rule applies to the facts of this case and Catalyst's alleged physical harm, we must first lay out the contours and purpose of the rule.

The rule of *Robins* can be stated in several ways: as refusing recovery for negligent interference with "contractual rights", as denying recovery for economic loss if that loss resulted from physical damage to the property of another, and as a rule that a tort to the person or property of one man does not make the tortfeasor liable to another merely because the injured person was under contract with one unknown to the wrongdoer.  *TESTBANK*, 752 F.2d at 1022.  The purpose of the rule is pragmatic: to limit the consequences of negligence and exclude indirect economic repercussions, which can be widespread and open-ended.  *Id.*  In other words, as we said in *TESTBANK*, the *Robins* rule is a pragmatic restriction on foreseeability. *Id.*

This court has faithfully applied the *Robins* rule and consistently denied recovery for economic loss to parties who have suffered no harm to a proprietary interest.  For example, in *Kaiser Aluminum and Chemical Corp. v. Marshland Dredging Co.*, 455 F.2d 957 (5th Cir. 1972), the plaintiff was denied recovery for losses resulting when its gas service was interfered with after the defendant negligently broke an upstream gas pipeline belonging to another.  In  *Dick Meyers Towing Service, Inc. v. United States*, 577 F.2d 1023 (5th Cir. 1978), the plaintiff tug boat operator was denied economic damages resulting when the tug was unable to timely deliver its tow after a lock on a river was closed as a result of defendant's negligence.  In *Louisville & Nashville Railroad Co. v. M/V BAYOU LACOMBE*, 597 F.2d 469 (5th Cir. 1979), we held that a railroad's right

4

to use a bridge damaged by defendant's vessel was not a property right sufficient to support recover for economic expectancy when the railroad was unable to traverse a bridge damaged after a vessel collided with it.

However, when the plaintiff does incur damage to his property, recovery for economic losses is allowed.  For example, in *Vicksburg Towing Co. v. Mississippi Marine Transport Co.*, 609 F.2d 176 (5th Cir. 1980), the owner of a dock damaged by defendant's negligence was allowed recovery for economic losses that it suffered when the defendant damaged its dock.  "[T]he distinction between recovery by an owner when his property was damaged and recovery by others, as applied in *Robins, Dick Meyers,* and *M/V BAYOU LACOMBE*, was 'meaningful, real and dispositive.'  *TESTBANK*, 752 F.2d at 1024 (citing *Vicksburg*, 609 F.2d at 177).  These cases demonstrate the consistent application of the rule stated by the majority in *TESTBANK* that "there can be no recovery of economic loss absent physical injury to a proprietary interest."  *Id.* at 1023.  Or, as stated in Judge Garwood's concurrance in *TESTBANK*, "physical harm to or invasion of a proprietary interest is generally an appropriate condition for recovery of negligently caused economic loss."  *Id.* at 1035.

The Defendants argue that Catalyst suffered no physical harm and that the facts of this case are indistinguishable from those in *Reserve Mooring, Inc. v. American Commercial Barge Line, LLC*, 251 F.3d 1069 (5th Cir. 2001).  Reserve Mooring operated a midstream mooring facility on the Mississippi River.  The mooring facility consisted of five buoys and anchor piles, which were installed pursuant to a permit from the United States Army Corps of Engineers.  In *Reserve*, the plaintiff sought economic losses caused when the defendant's barge sank while the barge was anchored at Reserve's mooring facility.  Because the site remained blocked and unavailable for use by other vessels for over three months, Reserve sued seeking its lost revenue resulting from loss of use of the mooring.  Because the sunk barge only interfered with Reserve's business

expectancy by preventing other vessels from mooring at the facility for a period of time, this court concluded that Reserve's claim for purely economic damages must be denied.  The key feature distinguishing this case from *Reserve* is that "Reserve [did] not dispute that it suffered no physical damage to its buoys and anchor piles and that its suit is for lost income only." *Id.* at 1070.  Catalyst's claims in this case are markedly different as it argues that its facility suffered physical damage prior to the removal of defendant's barge.

Catalyst argues that the presence of the barge in the intake channel, which is a functional component of Catalyst's hydroelectric generating facility, interfered with the unobstructed continuous flow of water in the channel, impairing the ability of the facility to operate as designed.  We agree with Catalyst that this harm qualifies as damage to its proprietary interest.

The summary judgment record is not well developed.  Although the Defendants argue that the facts Catalyst relies on do not satisfy the *Robins / TESTBANK* requirement, the Defendants do not challenge the factual basis relied on by Catalyst.  Catalyst presented the affidavit of the general manager of the hydroelectric facility which established the basic facts of the ownership and design of the facility and stated

> The physical presence of barge TILC-37 damaged the ability of the intake channel to safely deliver water from the Mississippi River to the turbine/generators of the electric power generation facility, requiring a reduction in the flow in the intake channel to prevent the barge from sinking and allow safe access to the barge for it's removal.

Although the exact nature of the barge's interference with the flow of water is not explained in any detail, the Defendants presented no evidence that the barge did not disrupt the water flow, which everyone agrees is critical to Catalyst's operations.  In fact, the Defendants' Statement of Uncontested Material Facts includes the following statements which support Catalyst's position.  After the

collision, the barge "drifted down river and entered into the station's inlet channel and ran aground in front of the station on the channel's east bank." Also, "As a consequence of the grounding of Barge TILC-37, the production output of the station's eight hydroelectric generating units was reduced." Finally, the Defendants' Statement of Uncontested Material Facts also contains Catalyst's answer to an interrogatory, which answer states

> The barge physically entered plaintiff's private leasehold property, and damaged the inlet canal portion of the Old River hydroelectric station by obstructing the safe and continuous flow of water into the hydroelectric station's turbines and creating an immediate hazard. After entering the inlet canal, the barge ran aground and began sinking. The Old River station operator's action to reduce the inlet channel's flow prevented the grounded barge from breaking free and causing further physical damage to the Old River hydroelectric station. The inlet channel is Old River's private leasehold property and is the conduit portion of the facility which directs water in the turbines which power the Old River station. The barge's recovery led to further vessels entry into Old River's private leasehold property. The barge's physical entry into Old River's leasehold property, its running aground on Old River's leasehold property, the physical recovery effort to secure and remove the barge from Old River's private leasehold property obstructed the conduit, thereby damaging it, and physically prevented Old River from using its only source of power for its generators. Fred O. Budwine repaired the damage by removing the barge from Old River's inlet channel. The physical damage was effectively repaired when the last vessel left the channel.

The Defendants produced no summary judgment evidence inconsistent with the above facts. These uncontested facts support Catalyst's claims of damage in two ways. First, this evidence demonstrates that the presence of the barge on Catalyst's property physically interfered with the flow of water through the intake channel to the turbines, interfering with Catalyst's use of the property as a hydroelectric station. The intake channel the barge intruded upon is an excavation from the Mississippi River to the dam which functions as a

No. 10-30466

conduit for water to flow into Catalyst's turbines. The intake channel, owned by Catalyst, is an integral part of its facility, built specifically for the purpose of delivering water to the turbines, which use the flow of water to generate electricity. By interfering with the flow of water, Catalyst's proprietary interest in its facility was invaded and harmed.

Our decision in *Consolidated Aluminum Corp. v. Bean Corporation*, 772 F.2d 1217 (5th Cir. 1985), supports this conclusion. In *Consolidated*, Bean, while conducting a dredging operation, ruptured a gas pipeline belonging to Texaco which caused damage to Consolidated's processing facility when the gas supply to the facility was interrupted. *Id.* at 1219. We reversed the district court's dismissal of Consolidated's claims against Bean, finding that Consolidated met the prerequisite of physical harm to property in which it has a proprietary interest. Like Catalyst, Consolidated suffered property damage and economic losses when Bean's negligence caused the flow of gas, a key supply component to its facility, to be interrupted. We held that harm resulting from the interruption of the gas supply to Consolidated's facility satisfied *TESTBANK*. *Id.* at 1222. In this case, the presence of the barge in Catalyst's intake channel caused damage to its hydroelectric facility by obstructing the supply of water, which was critical to its operations.

Second, because of the location of the barge in the channel, Catalyst feared that it would break free and cause further damage to the hydroelectric station. Removal of the barge was therefore necessary. In order for a tug to enter the intake channel to access the grounded barge safely, and to prevent damage to the station, Catalyst had to reduce the channel's water flow and shut down six of its eight turbines and reduce the remaining two to minimum power. Thus, the physical recovery effort to secure and remove the barge from the intake channel required a reduction in the flow of water necessary for the turbines to operate properly and generate the power they were designed to generate.

8

No. 10-30466

Acts taken in mitigation to prevent permanent physical damage can serve as the physical damage requirement in the *TESTBANK* rule. *Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp.*, 71 F.3d 198 (5th Cir. 1995). In *Corpus Christi*, a towboat collided with gas and condensate producing platform, owned by Corpus Christi, damaging a gas riser connected to the platform through which Corpus Christi's gas production flowed. *Id.* at 199. The gas riser was owned by Houston Pipeline. *Id.* As a result of the damage to the riser, Corpus Christi could not flow its gas through the riser, and in order to prevent damage to its producing wells, Corpus Christi shut in its wells and flared gas to preserve the wells during the repair period. *Id.* at 200. Except for this act in mitigation, Corpus Christi's damages from the loss of the wells would have been much greater than the value of the flared gas. *Id.* at 202. This court held that Corpus Christi's costs incurred in flaring the gas to save its wells constituted physical damage to a proprietary interest sufficient to satisfy the requirements of *TESTBANK* and entitled them to recover their economic losses equal to the value of the flared gas. *Id.*

> *TESTBANK* must not be construed as mandating the narrow and impractical result urged by Zapata: finding a defendant free of liability when the plaintiff incurs losses, although "voluntarily" so, that nevertheless are directly attributable to its efforts to avoid the physical damages that would have rendered that defendant liable for much larger sums.

*Id.* Citing *Corpus Christi*, we endorsed the idea that costs incurred to mitigate damages satisfy the physical damage requirement of *TESTBANK* in *In re: TAIRA LYNN MARINE LTD. NO.5, LLC.*, 444 F.3d 371, 379 (5th Cir. 2006) (noting that certain plaintiffs did not establish either physical damage or that they mitigated damages by shutting down operations to attempt to satisfy *TESTBANK*).

In this case, Catalyst shut in and reduced production of power at its hydroelectric facility to allow removal of the barge and to prevent further damage

to its facility.  Without its acts in mitigation, Catalyst would have run the unacceptable risk of incurring physical damage to its hydroelectric station. Accordingly, under *Corpus Christi*, Catalyst's  economic losses incurred as a result should have been allowed.

Defendants repaired the physical damage under both theories by removing the barge.  Defendants argue that after the barge was removed, there was no remaining physical damage to the intake channel or the rest of Catalyst's facility. Thus they argue that Catalyst did not suffer any physical injury to a proprietary interest, which is the requirement for recovery of economic losses.  It is true that there was no permanent damage to the intake channel after the barge was removed.  However, simply because the physical damage to or invasion of Catalyst's facility has been repaired by removal of the barge without cost to Catalyst does not mean that no physical damage occurred by the intrusion of Defendants' barge into Catalyst's facility.

IV.

Based on our conclusion that the entry of ARTCO's barge into Catalyst's privately owned hydroelectric facility caused physical damage to Catalyst's property and invasion of its proprietary interest, we reverse the judgment of the district court dismissing its claims on summary judgment and remand for further proceedings.

REVERSED and REMANDED.