# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 22, 2011

No. 10-31178

Lyle W. Cayce
Clerk

MICHAEL J FRUGE, ET AL,

Plaintiffs,

v.

AMERISURE MUTUAL INSURANCE COMPANY,

Defendant–Appellant
Cross-Appellee

v.

CHUBB CUSTOM INSURANCE CO,

Defendant–Appellee
Cross-Appellant.

Appeals from the United States District Court
for the Western District of Louisiana

Before JONES, Chief Judge, HAYNES, Circuit Judge, and ENGELHARDT,
District Judge.[*]

PER CURIAM:

Amerisure Mutual Insurance Company appeals the district court's
summary-judgment ruling determining that Louisiana law prohibits the

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

No. 10-31178

consideration of extrinsic evidence to prove mutual mistake; ranking Amerisure as the primary insurer; and allowing another third-party insurer, Chubb Custom Insurance Company, to bring a cross-claim for defense fees. Because the district court erred in refusing to consider extrinsic evidence to prove the theory of mutual mistake, we reverse and remand without considering ranking or standing.

**I**

Appellant–Cross-Appellee Amerisure Mutual Insurance Company (Amerisure) and Appellee–Cross-Appellant Chubb Custom Insurance Company (Chubb) each issued policies to Rockbit Holdings-owned corporations. This case arises from a motion for summary judgment on the validity of, ranking of, and reimbursements due under, insurance policies issued by Amerisure.

Rockbit Holdings owns Ulterra Drilling Technologies (Drilling), which in turn owns Ulterra MWD (MWD). Drilling manufactures and sells drill bits; MWD conducts site-specific installation and drilling. Ronald F. Thomason, Chief Financial Officer for both Drilling and MWD, contacted Cameron Jones of the William Rigg Company (Rigg) to purchase insurance policies for both companies.

Rigg filed commercial insurance applications on behalf of Drilling and MWD. Chubb issued two policies to MWD: a commercial general liability (CGL) policy with a $1,000,000 limit and an umbrella policy with a $5,000,000 limit. Both policies covered MWD from November 2005 to November 2006. Amerisure issued two policies to Drilling: a CGL policy with a $1,000,000 limit and an umbrella policy with a $10,000,000 limit. Both policies covered Drilling from December 31, 2005 for one year. Importantly, both of the Drilling policies issued by Amerisure also named MWD as an insured.

In August 2006, a drill sensor installed by MWD exploded, severely injuring Michael Fruge. Fruge sued Drilling and MWD (among others) for negligence. Amerisure and Chubb assumed MWD's defense in May 2007. Fruge

No. 10-31178

voluntarily dismissed Drilling in June 2007. On September 6, 2007, Amerisure issued two Policy Change Forms deleting MWD as a named insured. Amerisure then terminated its defense of MWD on September 18, 2007, effective October 19, 2007, claiming its addition of MWD to Drilling's policy was a clerical error.

Chubb continued defending MWD but filed a cross-claim against Amerisure for a declaration of Amerisure's obligation to defend MWD, a declaration of ranking of the two policies as applied to MWD, and a declaration of Amerisure's duty to contribute to defense costs. Amerisure moved to dismiss Chubb's cross-claim for failure to state a claim on which relief could be granted and moved for summary judgment on the grounds that: (1) no valid insurance contract between Amerisure and MWD was formed, due to a mutual mistake; (2) Chubb was solely responsible for defending MWD; and (3) Chubb lacked standing to sue Amerisure for defense costs or to compel Amerisure to defend MWD.

The district court granted Chubb's motion and denied Amerisure's, concluding that: (1) the parties impliedly consented to the application of Louisiana law; (2) Chubb could bring a cause of action against Amerisure to determine Amerisure's liability to MWD; (3) Louisiana law prohibited considering extrinsic evidence of mutual mistake in a facially unambiguous contract; (4) Louisiana law prohibited reformation of Amerisure's insurance policies in any event; (5) Amerisure's policies clearly insured MWD; and (6) Amerisure's CGL policy ranked as the primary policy, Chubb's CGL policy ranked as the excess policy, and all liability on umbrella policies required a pro-rata division in proportion to policy limits of 2:1 between Amerisure and Chubb. The district court's memorandum decision did not address Chubb's request for reimbursement of defense costs.

Amerisure and Chubb settled Fruge's suit with MWD subject to Amerisure reserving the right to appeal the district court's rulings to this court. Amerisure

No. 10-31178

appeals the district court's application of Louisiana law and its rulings regarding the inapplicability of extrinsic evidence, preclusion of reformation, insurance policy rankings, and Chubb's ability to bring a cross-claim. Chubb cross-appeals, requesting this court to rule that Chubb is entitled to contribution of legal defense fees from Amerisure.

## II

We review the grant or denial of a motion for summary judgment de novo.[1] "Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[2] This court views all disputed facts in the light most favorable to the non-moving party.[3] We review the district court's determination of state law de novo.[4]

## A

The district court applied Louisiana law, concluding that the parties agreed that Louisiana law governed the interpretation of the insurance policies. Amerisure asserts on appeal that the district court should have applied Texas, rather than Louisiana, law. However, Amerisure briefed only Louisiana law before the district court, never asserting that Texas law should apply or that the district court should engage in a choice-of-law analysis. Indeed, Amerisure relied exclusively on Louisiana law in its motion for summary judgment and in opposing Chubb's motion for summary judgment at the district court level. Now, for the first time on appeal, Amerisure argues that the district court should have independently analyzed Louisiana's choice-of-law rules and applied Texas law.

---

[1] *Catalyst Old River Hydroelectric Ltd. P'ship v. Ingram Barge Co.*, 639 F.3d 207, 210 (5th Cir. 2011).

[2] FED. R. CIV. P. 56(a); *Catalyst*, 639 F.3d at 210.

[3] *See United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008).

[4] *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 269 (5th Cir. 2009).

No. 10-31178

Failure to raise an argument before the district court waives that argument, including an argument for choice-of-law analysis.[5]  Amerisure has thus waived its choice-of-law argument.

**B**

Pursuant to Amerisure's motion for summary judgment seeking a declaration that it owed no contractual obligations to MWD, Amerisure offered affidavits of Rigg, MWD, and Amerisure officials.  The district court rejected the consideration of the affidavits and Amerisure's mutual mistake theory on two grounds: (1) because the contract was unambiguous, further interpretation was prohibited, and (2) Louisiana law categorically prohibits reformation "that limits the recovery of a third party tort victim through post-accident invalidation of an instrument" by agreement or judicial decree.

In determining that Louisiana law prohibits the consideration of extrinsic evidence, the district court applied Louisiana's general contract interpretation rule—when the terms of a written contract are clear, unambiguous, and lead to no absurd consequences, further interpretation of the parties intent is prohibited.[6]  However, Amerisure did not assert that the language of the contract was ambiguous.  Rather, Amerisure asserted that there was a mutual mistake.    In rejecting this argument, the district court failed to acknowledge that "[t]here is ample authority in [Louisiana] jurisprudence to allow reformation of an insurance policy when, because of mutual error or mistake, the

---

[5] *See Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 n.2 (5th Cir. 2009) ("Under the *Erie* rule, we must apply the substantive law of the forum state—including choice of law rules, which may dictate applying another state's laws."); *Thompson & Wallace of Memphis, Inc. v. Falconwood Corp.*, 100 F.3d 429, 434 n.3 (5th Cir. 1996) (finding any choice-of-law argument to be waived); *Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 74 (5th Cir. 1987) (holding that the choice-of-law issue was not waived because the issue was called to the court's attention in time to be properly considered).

[6] LA. CIV. CODE ANN. arts. 2045-2046 (2008).

policy fails to reflect the intent of the parties."[7]  Instead, the court relied on Louisiana Revised Statutes section 22:1262 and *Washington v. Savoie*[8] to conclude that Louisiana's public policy broadly precludes post-injury contract reformation—even for mutual mistake—when reformation would prejudice an injured third party.  Here, however, we do not deal with an injured third-party tort victim, whose rights we do not address here.  The "third party" in this case is an insurance company that expressly contracted for a risk without relying in any way on any other coverage.  Indeed, Chubb could not have relied on Amerisure's coverage because the Chubb policy precedes the Amerisure policy. Thus, we find the district court's rationale unpersuasive for several reasons.

Louisiana law clearly allows contract reformation.  Reformation is an equitable remedy designed to correct an error in the contract.[9]  "An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation set forth in the Louisiana Civil Code."[10]  As with other written agreements, insurance policies may be reformed if, through mutual error or fraud, the policy as issued does not express the agreement of the parties.[11] "Parole [sic] evidence is admissible to show mutual error even though the express terms of the policy are not ambiguous."[12]  To reform an instrument, "there must be clear proof of the antecedent agreement as well as the error in

---

[7] *Staten v. Sec. Indus. Ins. Co.*, 414 So. 2d 1328, 1331 (La. App. 2d Cir. 1982); s*ee, e.g.*, *Samuels v. State Farm Mut. Auto. Ins. Co.*, 939 So. 2d 1235 (La. 2006).

[8]  634 So. 2d 1176 (La. 1994).

[9] *Valhi, Inc. v. Zapata Corp.*, 365 So. 2d 867, 870 (La. App. 4th Cir. 1978).

[10] *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003).

[11] *Samuels*, 939 So. 2d at 1240.

[12] *Id.*

No. 10-31178

committing it to writing."[13] "The burden is on the one seeking reformation to prove the error alleged by clear and convincing evidence."[14] Louisiana law is clear: a party may present extrinsic evidence to prove mutual mistake, even when the language of the contract is not ambiguous.[15]

Specifically, Louisiana cases have allowed post-accident contract reformation. In *Samuels v. State Farm*, a homeowner purchased an umbrella policy from State Farm and a separate policy from Evanston Insurance for additional umbrella liability coverage.[16] An Evanston employee misidentified the underlying State Farm policy in the Evanston policy documents.[17] After the insured suffered an accident and made a claim, Evanston submitted multiple affidavits to demonstrate a mistake, which the Louisiana trial court rejected.[18] State Farm argued the lack of ambiguity in Evanston's policy prevented the court from reforming it.[19] The Louisiana Supreme Court rejected this argument, stating that parol evidence "is admissible to show mutual error even though the express terms of the policy are not ambiguous."[20] The court expressly

---

[13] *First State Bank & Trust Co. of E. Baton Rouge Parish v. Seven Gables Inc.*, 501 So. 2d 280, 285 (La. App. 1st Cir. 1986), *writ denied*, 502 So. 2d 103 (La. 1987).

[14] *Id.*

[15] We do not decide today whether Amerisure can meet the required burden of clear and convincing evidence, but only that the district court erred in refusing to consider extrinsic evidence to prove mutual mistake.

[16] 939 So. 2d. at 1237.

[17] *Id.* at 1238.

[18] *Id.* at 1238-39.

[19] *Id.* at 1241.

[20] *Id.* at 1240.

No. 10-31178

distinguished "interpreting an ambiguity in [a] policy" from "correcting a clerical error to reflect the parties' mutual intent."[21]

The district court acknowledged that Louisiana law allows reformation when a written instrument does not reflect the true intent of the contracting parties but differentiated the present case as being barred by Louisiana Revised Statutes section 22:1262 and public policy. We find the district court's reliance on this statute to be misplaced. Section 22:1262 provides:

> No insurance contract insuring against loss or damage through legal liability for the bodily injury or death by accident of any individual, or for damage to the property of any person, shall be retroactively annulled by any agreement between the insurer and the insured after the occurrence of any such injury, death, or damage for which the insured may be liable, and any such annulment attempted shall be null and void.[22]

The language and purpose of section 22:1262 suggests its irrelevance to a reformation action. By its terms, 22:1262 prohibits insurers and insureds from rescinding or annulling policy contracts by agreement.[23] Amerisure does not seek to annul the contract by agreement; it seeks reformation based on mutual mistake. Louisiana courts have not interpreted this statutory language. In the absence of controlling authority by the Louisiana Supreme Court, *Erie* requires this court to predict how the Louisiana Supreme Court would determine this

---

[21] *Id.* at 1241.

[22] LA. REV. STAT. ANN. § 22:1262 (2010).

[23] The Louisiana Supreme Court considers highly analogous decisions from other courts as persuasive authority. *C H F Fin. Co. v. Jochum,* 127 So. 2d 534, 539 (La. 1961). Thus it is relevant that several other state and federal courts interpreting similar provisions also suggest the statute's irrelevance to a reformation action. *See, e.g.*, *State Compensation Fund v. Mar Pac Helicopter Corp.*, 752 P.2d 1, 7-8 (Ariz. Ct. App. 1987) (holding a similar provision "by its very terms governs bilateral agreements [and] therefore does not apply to an insurer's unilateral rescission of a contract"); *Am. Cont'l Ins. Co. v. Steen*, 91 P.3d 864, 870 n.3 (Wash. 2004) (en banc) ("[The provision] voids *agreements* between insureds and insurers to retroactively annul a policy . . . . It is an important difference the legislature has declared law.").

8

issue and apply Louisiana law accordingly.[24]   It is unlikely the Louisiana Supreme Court would interpret section 22:1262 as barring all post-accident reformation in light of the Louisiana cases discussing post-accident reformation in various contexts, none of which apply, or even address, section 22:1262 or its predecessor, section 22:639.[25]

*Washington v. Savoie*, dealing with the particular requirements of uninsured motorist coverage, does not require judgment for Chubb here.[26]  The tortfeasor has settled.  The only dispute lies in who must bear the loss of settlement.  Additionally, by the parties' admissions, there is no evidence that Chubb relied on Amerisure's insuring MWD.[27]  In fact, Chubb issued its policies to MWD before Amerisure included MWD in its Drilling policies.

Whether the parties actually made a mutual mistake remains an open question.  Amerisure claims it listed MWD on its policies only through an unintended clerical error, and Amerisure's affidavits unequivocally disavow any

---

[24] *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 269 (5th Cir. 2009).

[25] *See, e.g.*, *Palmer v. Martinez*, 42 So. 3d 1147, 1156-57 (La. App. 2d Cir.) (reversing improper reformation to include uninsured party in insurance contract without discussing 22:1262), *writs denied*, 50 So. 3d 804, 805 (La. 2010); *Hope v. S & J Diving, Inc.*, 996 So. 2d 50, 54-55 (La. App. 4th Cir. 2008) (discussing Louisiana's insurance reformation principles in maritime-insurance context without reference to 22:1262); *Farmers-Merchants Bank & Trust Co. v. St. Katherine Ins. Co.*, 693 So. 2d 876, 880-81 (La. App. 3d Cir.) (noting court's "consistent" holding "in certain instances of negligence, mistake, error or fraud on the part of an agent or employee of an insurer," that an insurance contract may be reformed in a case when loss already occurred without reference to section 22:1262), *writ denied*, 703 So. 2d 25 (La. 1997); *Stanley v. Safeway Ins. Co.*, 682 So. 2d 951, 954 (La. App. 3d Cir. 1996) (rejecting reformation of applicable insurance date without reference to 22:1262), *writ denied*, 689 So. 2d 1371 (La. 1997).

[26] *See* 634 So. 2d 1176 (La. 1994).

[27] *Cf. Samuels v. State Farm Mut. Auto. Ins. Co.*, 939 So. 2d 1235, 1239-40 (La. 2006) (finding it "significant that State Farm in no way relied on this clerical error" and emphasizing that rather than the amount of coverage the insured will receive, "the only issue is which insurance company will benefit from [the] decision.").

No. 10-31178

intention to insure MWD.  Louisiana law permits consideration of this evidence to determine whether there was mutual mistake that merits reformation.

*     *     *

For the foregoing reasons, we REVERSE and REMAND the district court's judgment.